# Exhibit B

**USDA**

United States Department of Agriculture
Animal and Plant Inspection Service

**Inspection Report**

CHARLESTOWN, IN

Customer ID:
Certificate:
Site: 001

Type: ROUTINE INSPECTION
Date: 17-MAR-2017

**2.4   CRITICAL**

**NON-INTERFERENCE WITH APHIS OFFICIALS.**

USDA inspectors examined animals within the licensee's home.  There were two lion cubs and one orange tiger cub presented for inspection. The two lion cubs had been declawed. There were also a variety of other animals in the main level of the house. When asked if there were any other animals in the house, two primates were produced from the upper level of the house. When asked again if there were any other animals the licensee and licensee's wife both indicated that there were not. After going into another area the inspectors noticed an area adjacent to the armadillo enclosures. When asked if the area could be inspected, the licensee denied entry. The licensee became irritated and began cursing at the inspectors. The inspection team was able to continue the inspection as long as that area was not inspected.
While the inspectors were examining the adult Lions, Tigers and Tiger-Lion hybrids there were several conversations between the licensee and the inspectors regarding the lack of cubs and the low cub numbers. The licensee maintained that only one tiger cub was present and that the inspection team had seen it within the house.

After inspecting all animal areas and before starting on the review of paperwork, the licensee and licensee's wife were asked if there were any other animals on the property. Their response was no. The licensee was given no less than a dozen chances throughout the inspection process to inform the inspection team of the presence of the tiger cubs, but he maintained that we had seen all of the animals on the property.

At the end of the inspection, only after being presented with evidence that the UDSA inspection team knew about two other tiger cubs present on the property, the Licensee admitted that he had lied to the inspectors. He indicated that he had lied to the inspection team and that he didn't want to be punished for something he believed his attending veterinarian did. He informed the inspection team that the attending veterinarian had "botched" the declaw procedure and that the two tiger cubs had "complications" that he was hiding from us. He said that he was "embarrassed" and didn't want us to see them. He allowed the inspection team to examine the tiger cubs but refused to allow the team to inspect the room where the animals were being held. The animals enclosure was a transport carrier that was taken to a deck in front of the house for inspection.

| Prepared By: | NEAFSEY MICHAEL | Date: |
|---|---|---|
| | NEAFSEY MICHAEL      USDA, APHIS, Animal Care | 18-MAR-2017 |
| Title: | VETERINARY MEDICAL OFFICER   6094 | |
| Received By: | | |
| | | Date: |
| Title: | | 18-MAR-2017 |

United States Department of Agriculture
Animal and Plant Health Inspection Service



## Inspection Report

A licensee or representative shall not interfere with any APHIS official in the course of carrying out his or her duties. The inspection process requires a working relationship between the USDA and the facility. Interference makes this process difficult to impossible. Correct by ensuring that the Licensee and all facility staff are instructed to truthfully answer questions posed by inspectors and to not otherwise interfere with the inspection process

**2.40(b)(2)        DIRECT           REPEAT**

**ATTENDING VETERINARIAN AND ADEQUATE VETERINARY CARE (DEALERS AND EXHIBITORS).**

During inspection there were two 5-6 week old tiger cubs that were painful on four legs. Each cub had one leg that was bandaged and the licensee said there were open wounds under the bandages. Their affected paws were significantly swollen, spotting blood, and the cubs were struggling to walk, appearing very sore, trying to walk after being declawed approximately two weeks earlier.

During inspection the licensee was asked specifically "are there any more cubs here?", and he said "no." He was also specifically asked if there were only two lion cubs and one tiger cub here, that's all we've got this year and nobody else?  The Licensee replied, "Not yet." During the remainder of the facility walk-through, he was asked multiple times about the number of cubs and was given every opportunity to inform the inspection team about the presence of additional animals.  Only after reviewing the facility paperwork and presenting evidence that there were two tiger cubs that had not been seen by the inspection team, the licensee admitted to lying to the inspectors when he told them they had seen all the animals and stated that he had been hiding them. He felt the cubs condition was the fault of his attending veterinarian and he did not want to be punished for the veterinarian's mistakes. He informed the inspection team he felt the attending veterinarian had "botched" the declaw procedure and that the two tiger cubs had "complications" so he was hiding them from us. He said that he was "embarrassed" and didn't want us to see the condition of the cubs. He allowed the inspection team to examine the tiger cubs but refused to allow the team to inspect the room where the animals were being held. The animals primary enclosure was a transport carrier brought to a deck in front of the house for inspection of the animals.

Both cubs were brought outside for inspection in a crate that was approximately 24 inches long by 18 inches wide. Neither animal would walk from the crate onto the wooden deck for inspection. The facility representative had to physically remove each animal. Once removed it was evident that both tigers had significantly swollen paws and limbs and were reluctant to walk. Additionally both cubs appeared distressed, they vocalized nearly the entire time that they were on the deck.
When placed on the deck, the orange tiger cub immediately sprawled on the decking material (laying down). After persuasion by a facility representative it moved slowly for only short periods of time before resting in front of the

| Prepared By: | NEAFSEY MICHAEL | Date: |
| --- | --- | --- |
| | NEAFSEY MICHAEL        USDA, APHIS, Animal Care | 18-MAR-2017 |
| Title: | VETERINARY MEDICAL OFFICER   6094 | |
| Received By: | | |
| | | Date: |
| Title: | | 18-MAR-2017 |



inspectors. After each step there were spots of blood left on the decking from the front paws. The white tiger cub was very reluctant to move. It walked only when prompted, and when it did so, this animal was severely lame dragging the hind limb and only occasionally bearing very little weight on it. This cub consistently laid down and appeared to be suffering throughout the inspection.

According to the licensee the declaw procedure took place approximately two weeks prior to inspection and was conducted by the attending veterinarian. Paperwork regarding the procedure was not made available to the inspectors and the attending veterinarian was unable to be contacted by the inspectors to confirm the exact date of the procedures, the location at which they were performed, or by whom. The licensee stated that he believed the veterinarian "botched this" and that the bandages were too tight. Reportedly, both animals' feet were bandaged following the surgery and the bandages were left on the animals overnight. According to the licensee, he removed initially the bandage the next day. The licensee stated that he had re-bandaged both tiger cubs the day before the inspection because of the continued swelling and injury to the skin. He also reported that at that time he gave both animals an unknown dose of amoxicillin. The licensee acknowledged that this medication was not prescribed by the veterinarian and a dose or frequency of administration was not discussed between the licensee and the attending veterinarian for these animals. The licensee stated that his attending veterinarian had not been available to examine the animals because he was out of the country and that he had not sought alternative emergency veterinary care for either animal.

According to the licensee the attending veterinarian completes the declaw surgeries at the facility and not at a dedicated surgical site. The attending veterinarian has a mobile practice. The licensee stated that no animal that is declawed receives medications for pain because he doesn't think that they are in pain. No record of any pain management or antibiotics were provided by the licensee. No written post-operative care was provided to the licensee. During the inspection it was noted that within the past year approximately a dozen more large felines have been declawed by the attending veterinarian. There were several Lynx, Bobcat, Tigers, Lions, Tiger-Lion hybrids and Cougars that were noted to have declaws in their medical records at the facility. There were also two lion cubs inspected that had the declaw procedure conducted on the same day as the two tigers.

The declawing of large exotic felines is well known to cause ongoing pain, discomfort, or other pathological conditions in the animals. In addition, declawing does not safeguard the public or the animals from biting and other predatory behaviors. The routine declawing of wild and exotic carnivores does not constitute appropriate veterinary care. Additionally, the failure to have animals showing clinical signs of disease, injury, or illness examined by a veterinarian can result in delays in proper treatment and prolonged suffering.

Correct by ensuring that both cubs are immediately examined by a licensed veterinarian familiar with the handling, care, and veterinary treatment of big cats and appropriate veterinary care must be provided to these animals.

| Prepared By: | NEAFSEY MICHAEL | Date: |
| --- | --- | --- |
|  | NEAFSEY MICHAEL      USDA, APHIS, Animal Care | 18-MAR-2017 |
| Title: | VETERINARY MEDICAL OFFICER   6094 |  |
| Received By: |  | Date: |
| Title: |  | 18-MAR-2017 |



United States Department of Agriculture
Animal and Plant Health Inspection Service

**Inspection Report**

The licensee must ensure that that veterinarian is provided with the authority to perform any diagnostic testing and initiate appropriate treatment they deem necessary.

Additionally, all health related illness or issues that are observed in any animals maintained by the licensee must be referred to a licensed veterinarian from this point forward so that they receive appropriate diagnosis and treatment. The licensee was verbally instructed to have the two tiger cubs examined and treated by a veterinarian within one hour of delivery of the report.

A complete routine inspection was conducted on 17 March 2017. This report is limited to the direct veterinary care citation for the tiger cubs identified on that inspection and interference with the inspection. A second inspection report containing all other noncompliant items will follow. Both the inspection and exit interview, explaining the serious non-compliances, were conducted with the licensee and licensee's wife on 17 March 2017.

**Additional Inspectors**

Houser Annmarie, Animal Care Inspector

Mchenry Kerry, Veterinary Medical Officer

**Prepared By:** NEAFSEY MICHAEL

NEAFSEY MICHAEL    USDA, APHIS, Animal Care

**Title:** VETERINARY MEDICAL OFFICER  6094

**Date:** 18-MAR-2017

**Received By:**

**Title:**

**Date:** 18-MAR-2017