**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

PEOPLE FOR THE ETHICAL )
TREATMENT OF ANIMALS, INC., )
  )
            Plaintiff, )
  )
v. )
  )
WILDLIFE IN NEED AND ) Cause No. 4:17-cv-00186-RLY-DML
WILDLIFE IN DEED, INC., )
TIMOTHY L. STARK, AND )
MELISA D. STARK, )
  )
            Defendants. )

**OMNIBUS BRIEF IN SUPPORT OF PLAINTIFF'S MOTIONS
FOR SANCTIONS, CONTEMPT, CHANGE IN OWNERSHIP
OF BIG CATS, AND ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................ii

TABLE OF AUTHORITIES ..............................................................................................iii

PRELIMINARY STATEMENT AND REQUEST FOR RELIEF.......................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

    A.  Defendants Have a Pattern of Obstruction and Defiance ............................................3

    B.  Defendants and Their Co-Conspirator, Mr. Lowe, Lack Credibility. ..........................5

    C.  Defendants and Their Co-Conspirator, Mr. Lowe, Willfully and Knowingly Violated this Court's Preservation Order.........................................................................................6

    D.  Mr. Lowe's Control Over the Big Cats Threatens Their Safety and Well-Being. .......8

ARGUMENT ....................................................................................................................12

I.    Defendants Should Be Sanctioned for Willfully Violating the Preservation Order and Jeopardizing the Integrity of these Proceedings...................................................12

    A.  The Court May Issue a Default Judgment to Sanction Defendants' Bad Faith, Willful Misconduct Under Its Inherent Authority. .................................................................12

    B.  Defendants' Defiance Will Not Be Deterred by Lesser Sanctions.............................15

    C.  The Court Should Order the Big Cats Transferred to Reputable Sanctuaries. ...........15

    D.  Defendants Should Be Required to Compensate PETA for All Costs Incurred Since the Unlawful Transfer Through the Adjudication of this Motion. ...................................16

II.   This Court Can and Should Hold Defendants in Contempt and Order Mr. Lowe to Show Cause Why He Should Not Be Held In Contempt....................................................17

    A.  Defendants Should Be Held in Contempt for Violating the Court's Preservation Order...........17

        1.  The Preservation Order Unambiguously Required Defendants to Retain Possession, Custody, and Control Over the Big Cats They Possessed When the Order Was Issued. ......17

        2.  Defendants Violated the Preservation Order. ...................................................19

        3.  Defendants' Violation of the Preservation Order Was Significant.......................................19

        4.  Defendants Failed to Take Steps to Comply with the Preservation Order. ..........................20

    B.  Mr. Lowe Should Be Required to Show Cause Why He Should Not Be Held in Contempt for Aiding and Abetting ...........................................................................20

        1.  Mr. Lowe Had Actual Knowledge of the Court's Order. ....................................21

        2.  Mr. Lowe Worked in Active Concert or Participation with Defendants to Violate the Preservation Order. ............................................................................................21

CONCLUSION AND REQUEST FOR RELIEF ..............................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arbuckle Adventures, LLC*, AWA Docket No. 16-0003,
    2018 WL 2289343  (U.S.D.A. May 2, 2018) ................................................................ 10

*Bailey v. Roob*, 567 F.3d 930 (7th Cir. 2009) ................................................................ 17

*Chambers v NASCO, Inc.*, 501 U.S. 32 (1991) ................................................................ 12

*Cooper v. United Vaccines, Inc.*, 117 F. Supp. 2d 864 (E.D. Wis. 2000) .......................... 18

*F.T.C. v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ................................................................ 17

*Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018) ...................................... 12, 13, 14

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) .................................... 16

*Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136 (7th Cir. 1987) ..................... 12

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962) ................................................................ 12

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) ............................................... 18

*Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:14-cv-303038,
    2016 WL 4197573 (C.D. Ill. Aug. 9,  2016) ......................................................... 18

*Prima Tek II, LLC v. Klerk's Plastic Industries, B.V.*, 525 F.3d 533 (7th Cir. 2008) .......... 17

*S.E.C. v. Homa*, 514 F.3d 661 (7th Cir. 2008) ................................................................ 20

*Szabo v. U.S. Marine Corp.*, 819 F.2d 714 (7th Cir. 1987) .............................................. 18

*Tucker v. Williams*, 682 F.3d 654 (7th Cir. 2012) ........................................................... 12

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) ................................................ 20

**Statutes**

7 U.S.C. § 2133 ................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 65(d)(2)(C) ............................................................................................. 21
Fed. R. Evid. 609(a)(1)(A) ................................................................................................. 5

**Regulations**

9 C.F.R. § 2.1 ................................................................................................................... 10
9 C.F.R. § 2.3 ................................................................................................................... 10
9 C.F.R. § 2.11 ................................................................................................................. 10
9 C.F.R. § 2.131 ................................................................................................................. 6

Plaintiff People for the Ethical Treatment of Animals, Inc. ("***PETA***"), by and through its counsel, submits this brief in support of four motions that seek various relief for harms arising out of Defendants Wildlife in Need and Wildlife in Deed, Inc. ("***WIN***"), Timothy L. Stark, and Melisa D. Stark (collectively, "***Defendants***") and non-party Jeff Lowe conspiring to transfer the lions, tigers, or hybrids thereof ("***Big Cats***") at issue in this lawsuit in violation of this Court's Consent Order Preserving Evidence and Withdrawing Rule 27 Petition, *PETA v. Wildlife in Need and Wildlife in Deed, Inc., et al.*, Case No. 4:17-mc-00003-RLY-DML ECF No. 27 (S.D. Ind. Sept. 18, 2017) ("***Preservation Order***.")[1]

## PRELIMINARY STATEMENT AND REQUEST FOR RELIEF

This Court's Preservation Order is plain and straightforward:

> 1.   The Respondents shall preserve all tangible and documentary evidence relating to (and including) the tigers, lions, and hybrids thereof in Respondents' possession, custody, and control; and

On February 19, 2019, after learning of Red River Safari, a new partnership between the Defendants and third-party Jeff Lowe, PETA provided notice to Mr. Lowe of the Order's existence and of the limitations that it imposed on the Defendants' ability to transfer ownership of the Big Cats at issue in this case.

Despite the restrictions of Preservation Order, Defendant Tim Stark and Mr. Lowe now apparently believe they can escape its coverage. On April 11, 2019, Mr. Stark purportedly transferred title to all the Big Cats in Defendants' possession to Mr. Lowe. ECF No. 205, at 9. Having attempted to purge the central evidence in this case, Mr. Stark now claims that dismissal is warranted since the transfer mooted "the basis upon which PETA had grounds to bring this action." *Id.* at 9

---

[1] Pursuant to Local Rule 37-1 counsel for the parties have been unable to reach an accord on the issues advanced in this motion. In an attempt to resolve this matter with Mr. Lowe, counsel for PETA sent him a letter on May 21, 2019, but have received no response.

Mr. Stark is wrong that this stunt has mooted the lawsuit. The parties do, however, agree on one thing: Defendants' and Mr. Lowe's actions mean that this case should come to an end. Given this latest malfeasance, which takes place against the backdrop of Defendants' long-history of defiance of this Court's orders, and their incipient plans to move their operations and Big Cats to start Red River Safari in Oklahoma, PETA hereby respectfully requests that this Court grant all of PETA's four motions and enter findings and orders as follows:

1. Finding Defendants willfully and with bad faith violated the Preservation Order (*see infra* Sect. I.A-B at 12-16 and Sect. II.A at 17-19);

2. Finding Mr. Lowe had actual knowledge of the Preservation Order (*see infra* Sect. II.B.1 at 21);

3. Finding Mr. Lowe aided and abetted Defendants' violation of the Preservation Order (*see infra* Sect. II.B.2 at 21);

4. Entering terminating sanctions consisting of a default judgment in PETA's favor against all Defendants (*see infra* Sect. I.A-B at 12-16), which provides the following relief:

   a. A permanent injunction against Defendants and Mr. Lowe that terminates their ownership or possessory rights in the Big Cats (*see infra* Sect. I.C at 16);

   b. Appoints a guardian ad litem to identify reputable wildlife sanctuaries and to determine the most appropriate placement for the forfeited Big Cats, consistent with the animals' best interests (*see infra* Sect. I.C at 16); and

   c. Awards PETA the costs and attorney's fees incurred as a result of Defendants' violation of the Preservation Order (*see infra* Sect. I.D at 16);

5. Finding Defendants in contempt for violating the Preservation Order (*see infra* Sect. II.A at 17-20); and

6. Entering a Show Cause Order against Mr. Lowe requiring him to show cause why he should not be held in contempt for aiding and abetting Defendants' violation of the Preservation Order (*see infra*, Sect. II.B at 20-22).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants Have a Pattern of Obstruction and Defiance

PETA filed this suit to bring a permanent end to Defendants' abuse and neglect of Big Cats and to secure the safety of the Big Cats in Defendants' possession by having them transferred to reputable wildlife sanctuaries. ECF No. 1 at 26. On September 18, 2017, the Court, with the parties' consent, entered the Preservation Order the parties had negotiated through counsel, which required Defendants to "preserve all tangible and documentary evidence relating to (and ***including***) the tigers, lions, and hybrids thereof in [their] possession, custody, and control" (emphasis added).

Defendants have never moved to clarify or set aside the Preservation Order.

On February 12, 2018, the Court issued the Preliminary Injunction, prohibiting Defendants from engaging in three specific forms of a "take" under the Endangered Species Act ("***ESA***"). ECF No. 89. During the pendency of this action, Defendants may not declaw the Big Cats. *Id*. at 17. They may not publicly display any Big Cat Cub under the age of eighteen months or allow any person, other than Defendants or their employees, to have "any physical contact with a Big Cat Cub." *Id*. at 18. They may not prematurely separate any Big Cat Cubs from their mothers without medical necessity and proper notice to the Court. *Id*.

Mr. Stark has referred to the Preliminary Injunction as "bullshit." ECF No. 193 at 5. Unsurprisingly, Defendants have been held in contempt for violating it, and have been

reprimanded or sanctioned on eight other occasions for discovery misconduct. *See* ECF No. 51 (Jan. 1, 2018) (granting motion to compel and awarding fees); ECF No. 73 (Jan. 19, 2018) (prohibiting Defendants from introducing evidence at preliminary injunction hearing as sanction for discovery misconduct and taking under advisement the issue of Defendants' prior violation of the Preservation Order and noting "The defendants have engaged in a pattern of obstreperous behavior to thwart PETA's discovery efforts, have failed in their obligations under the discovery rules, and have defied this court's discovery orders."); ECF No. 94 (Mar. 12, 2018) (setting hearing and requiring Defendants to show cause regarding sanctions and discovery violations and noting "The defendants' failures to comply with discovery—and their apparent intention to continue to refuse to comply—threaten the orderly prosecution and defense of this case."); ECF No. 113 (May 8, 2018) (entry of order from show cause hearing granting in part motion to compel and taking under advisement sanctions and noting, "The court notes that certain statements made by Mr. and Mrs. Stark at the show cause hearing regarding the availability of documents or computers were inconsistent with each other, causing the court to continue to be concerned about the completeness and accuracy of their representations regarding their discovery efforts in the past and their intent to comply in the future."); ECF No. 162 (Sept. 12, 2018) (awarding fees on motion to compel); ECF No. 178 (Nov. 9, 2018) (granting motion to compel and taking under advisement sanctions and noting ("The court agrees with PETA that the defendants continue to defy the court's orders and shirk their discovery obligations."); ECF No. 191 (Mar. 26, 2019) (granting motion to compel and awarding fees and recognizing Mr. Stark's "misguided views about . . . the consequences of failing to abide by court orders"); and ECF No. 193 (Mar. 27, 2019) (holding Defendants in contempt for violating the Preliminary Injunction).

### B.     Defendants and Their Co-Conspirator, Mr. Lowe, Lack Credibility.

Mr. Stark and Mr. Lowe both have a history of dishonesty. Mr. Stark has "demonstrated his willingness to lie to the court." ECF No. 193 at 8. Mr. Lowe is a convicted felon who defrauded a charity out of more than one million dollars in goods.[2] In discovery, both individual Defendants have denied the existence of Red River Safari, the zoo-type facility they are constructing with Mr. Lowe and publicly promoting in Thackerville, Oklahoma. *Compare* T. Stark Tr. 20:17-22:16 ("Q. What is Red River Safari? A. Nothing. . . . It's a hypothetical situation, and if you continue to ask questions about it, this deposition will be over. . . . I am not going to sit here and play games over hypothetical situations. So there is nothing there. So I'll tell you straight up right now. Red River Safari, I'm not going to ask—answer questions about it. It's none of your damn business, and it's just that simple. It does not exist.") attached to the Smith Decl. as Exhibit 24, *with* Jeff Negan Lowe, Facebook (May 20, 2019) ("The Wynnewood park has some water issues (too much of it) but the Thackerville build continues."), attached to the Smith Decl. as Exhibit 5; Jeff Negan Lowe, Facebook (May 13, 2019) ("Beautiful day for building cages!"), attached to the Smith Decl. as Exhibit 6; and Jeff Negan Lowe, Facebook (May 5, 2019) ("The majority of the land clearing is finished. Now comes the fun part! Calling all welders and cage builders to Thackerville!"), attached to the Smith Decl. as Exhibit 7.

Defendants and Mr. Lowe share a deep disdain for PETA. *See, e.g.*, Jeff Negan Lowe, Facebook (May 20, 2019) ("We can all bombard the IRS with complaints against a non profit entity like PETA from terrorizing small businesses in America."), attached to the Smith Decl. as Exhibit 8; PETA-WIN_005563, Wildlife In Need, Inc., Facebook (Aug. 10, 2017) (calling on

---

[2] Mr. Lowe's indictment, plea agreement, and conviction are attached to the Declaration of Asher Smith ("**Smith Decl.**") as Exhibits 1-3, and are relevant and admissible pursuant to Fed. R. Evid. 609(a)(1)(A).

active and retired military veterans to "help us fight" PETA, who they term a "terrorist group"),
*available at* https://www.facebook.com/WildlifeinNeed.Inc/videos/1418300388218390/;[3] and
ECF No. 204, Ex. 19 (Mr. Stark refers to PETA as "walking human flesh devils"). Determined to
deny PETA the relief it seeks, Mr. Stark has vowed that as long as he is "breathing," PETA would
"not confiscate as much as a damn field mouse off [his] property." *Id.* Like Defendants, Mr. Lowe
makes his living harming and harassing Big Cats, including by prematurely separating Big Cat
Cubs from their mothers and by forcing Big Cat Cubs to participate in encounters with the public.
Lowe Tr. 100:13-101:8, 103:8-105:12, attached to the Smith Decl. as Exhibit 4.[4]

### C.   Defendants and Their Co-Conspirator, Mr. Lowe, Willfully and Knowingly Violated this Court's Preservation Order.

On April 11, 2019, Mr. Stark transferred title to all of Defendants' Big Cats to Mr. Lowe,
with the intent to transfer physical possession of the Big Cats in the future. ECF No. 205, at 9.
Defendants have not produced the transfer documentation in discovery. The nearly illegible transfer
document filed with the Court, ECF No. 205-19, shows that Defendants have transferred ownership
of twenty-three Big Cats, the total known to PETA to exist. The address noted for Mr. Lowe is the
site of Greater Wynnewood Exotic Animal Park, Mr. Lowe's facility in Wynnewood, Oklahoma. The
paperwork appears to state, near the bottom of each page beside an asterisk, that these animals will

---

[3] PETA will provide a copy of this video on DVD upon the Court's request.

[4] The USDA considers events like Tiger Baby Playtime, as conducted by Defendants and
Mr. Lowe, to be illegal. *See, e.g.*, ECF No. 210-2 (USDA complaint against Mr. Stark seeking
revocation of his exhibitor's license for violating 9 C.F.R. § 2.131(b)(1) by "caus[ing] trauma,
behavioral stress, physical harm, or unnecessary discomfort" to Big Cats; violating 9 C.F.R.
§ 2.131(c)(1) by exhibiting Big Cats "without any distance or barriers" between them and the
public, and by causing multiple injuries; violating 9 C.F.R. § 2.131(c)(3) by exposing Big Cats "to
rough or excessive public handling" and by not allowing Big Cat cubs and juvenile Big Cats an
adequate rest period; and violating 9 C.F.R. § 2.131(b)(2)(i) by "us[ing] physical abuse" to handle
Big Cats).

be moved at a later date. Presumably, they will be moved to Oklahoma, either to Mr. Lowe's Wynnewood facility, or to Red River Safari in Thackerville.

Defendants concealed the transfer until May 14, 2019. ECF Nos. 205, 205-19. In failing to timely disclose the material change in circumstances, Defendants ensured that PETA would continue to devote considerable time and resources preparing their expert disclosures, which are due May 31, 2019. Although the corporate defendant and Melisa Stark claim they had no knowledge of the transfer until this time, ECF No. 205, Mr. Stark is the executive officer of the corporate defendant, its primary decision maker and its principal. The corporate defendant and Melisa Stark likewise claim they had no ownership or control over the Big Cats to prevent the transfer, *id.*, though all Defendants jointly answered this litigation by admitting, among other things, that the corporate defendant owns and exhibits the Big Cats at issue. ECF No. 23 at ¶ 1 (referring back to Complaint, ECF No. 1, at ¶ 13 ("Wildlife in Need owns and exhibits the Big Cats that are the subject of this action.").

Defendants claim the transfer was motivated by Mr. Stark's "health issues" and by Defendants' failure to employ an attending veterinarian to care for the Big Cats. ECF No. 205 at 9. In short, Defendants concede that they are unable to provide the Big Cats with adequate care. However, this explanation does not explain why they effectuated the transfer, as the change in ownership did not remedy either issue. Prior to Mr. Stark's two-day hospitalization, both Mr. Stark and Mr. Lowe were spending most or all of their time in Oklahoma. Thus, neither was in a position to provide the Big Cats day-to-day care. Further, since Mr. Lowe is not a veterinarian, his ownership of the Big Cats did not somehow suddenly cure Defendants' failure to secure the services of a veterinarian capable of caring for the Big Cats.

**D.     Mr. Lowe's Control Over the Big Cats Threatens Their Safety and Well-Being.**

Mr. Lowe is a self-proclaimed "Big Cat hoarder" and is not likely to part willingly with his ownership interest in Defendants' Big Cats. Lowe Tr. 118:2-4 ("I'm a cat hoarder. When I have a cat born, I want to keep my cat.").

Mr. Lowe has previously aided and abetted the spoliation of evidence and violation of a court order by parties in other litigation brought by PETA under the ESA. *See* PETA's Emergency Motion for Preservation Order and Order to Show Cause Why Joseph Maldonado, Jeffrey Lowe, and the Greater Wynnewood Exotic Animal Park Should Not Be Held in Contempt, *People For The Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc. et al.*, 8:16-cv-02899-CEH-AAS [hereinafter "***PETA v. DCWT***"], ECF No. 95 (M.D. Fla., Aug. 28, 2017) (detailing the role Mr. Lowe's facility played in receiving spoliated Big Cats), attached to the Smith Decl. as Exhibit 9; Order, *PETA v. DCWT*, ECF No. 96 (M.D. Fla., Aug. 31, 2017) (granting emergency preservation order), attached to the Smith Decl. as Exhibit 10; and Report and Recommendation, *PETA v. DCWT*, ECF No. 230 (M.D. Fla., Mar. 2, 2018) (recommending terminating sanctions on pre-amended complaint for defendants' bad faith and willful transfer of tigers at issue in ESA litigation to Mr. Lowe's Greater Wynnewood Animal Park), attached to the Smith Decl. as Exhibit 11;[5] *see also* Lowe Tr. 78:17-6 (Mr. Lowe testified that his business partner "typically wouldn't accept a large number of cats without okaying it through [Mr. Lowe]" and admitted that he was consulted prior to the transfer of "the Dade City cats.").

---

[5] When PETA was granted leave to file an amended complaint, the Report and Recommendation was remanded for further consideration of the procedural issues. *See PETA v. DCWT*, ECF No. 254 (M.D. Fla., Jun. 6, 2018), attached to the Smith Decl. as Exhibit 12. The parties provided briefing "addressing what impact PETA's second amended complaint has on the findings and conclusions in the report and recommendation," and are awaiting an updated report and recommendation. *See PETA v. DCWT*, ECF No. 258 (M.D. Fla., Jun. 8, 2018, attached to the Smith Decl. as Exhibit 13.

After Mr. Lowe took control of the big cats at issue in this prior suit, he demanded a hefty ransom for the return of the animals. Jeff Lowe, Facebook (Aug. 5, 2017) ("We have offered PeTA the tigers on ONE CONDITION that they have refused. Pay us $1900 a day for every day that 19 cats have been here. Pay us the $5000 it cost us to tranquilize and unload them. Pay us another $5000 to tranquilize them and re-load them. And reimburse me for the steel we bought to house them. They refused this proposal."), attached to the Smith Decl. as Exhibit 14. He also threatened to intermingle the tigers at issue with others at his park. Jeff Lowe, Facebook (July 27, 2017) ("I think it's time to move 19 of our tigers in with 19 Florida tigers. Let the expert, Jay Pratte sort them out."), attached to the Smith Decl. as Exhibit 15. After the tigers were transferred to a reputable sanctuary, Mr. Lowe falsely claimed his partner had passed off so-called "junk tigers" in place of the ones at issue in the suit. Jeff Negan Lowe, Facebook (Nov. 16, 2018) ("He even burned you on the Sterns (sic) cats from Dade City. You think he sent them to Pat Craigs? (sic) Think again. He sent 19 maimed and fixed tigers, and he kept all 19 young healthy tigers and screwed you into taking care of what he considered "junk tigers" in fact you did it twice and just gave me even more room to bring in healthy breeders!!!!"), attached to the Smith Decl. as Exhibit 16. There, PETA created an extensive photographic inventory from publicly available photographs to ensure that the proper tigers were transferred to the sanctuary. Here, PETA would have to do the same to identify Defendants' Big Cats if they were integrated into Mr. Lowe's extensive inventory.

If he were ordered to surrender the Big Cats after they were moved to Oklahoma, Mr. Lowe could capitalize on any information asymmetry by passing off Big Cats of his own as those formerly belonging to Defendants. In doing so, Mr. Lowe would benefit by diversifying his breeding gene pool.

Mr. Lowe is highly motivated to transfer the Big Cats to Oklahoma because his USDA license does not allow him to display the Big Cats in Indiana. His USDA license (73-C-0230) permits him to conduct regulated activity only at 25803 NCR 3250, Wynnewood, OK. The AWA's regulations provide that "[l]icenses are issued to specific persons for specific premises and do not transfer upon change of ownership, nor are they valid at a different location." 9 C.F.R. § 2.5(d). Thus, in order to display the Big Cats on Defendants' property, Mr. Lowe would be required to apply to the USDA to add a new site to his existing license.

He likely cannot do so. Licensees who wish to add a new site to an existing license must satisfy the same requirements as those required for an *initial* AWA license, which requires that the applicant demonstrate that its facilities comply with the AWA and its regulations. 7 U.S.C. § 2133; 9 C.F.R. §§ 2.1, 2.3, 2.11; *see also Arbuckle Adventures, LLC*, AWA Docket No. 16-0003, 2018 WL 2289343, at *1 (U.S.D.A. May 2, 2018) (noting that the USDA may add a second site to the respondent's AWA license once the respondent "establishes to [the USDA] during an inspection that it is in compliance with the [AWA] and the Regulations and Standards"). Mr. Lowe satisfying these requirements at WIN is likely an impossibility. Upon information and belief, the USDA has been unable to conduct inspections at WIN since Mr. Stark's March 29, 2017, refusal to allow inspectors to enter the property with the armed officers the agency requires for the inspector's protection. *See* PETA Exhibit 8C (USDA report of March 29, 2017, inspection of Tim Stark and Wildlife in Need), attached to the Smith Decl. as Exhibit 17.

Mr. Lowe would also be ineligible to add a new site to his existing license because of a prohibition on issuing a license to any applicant who has violated local laws pertaining to the ownership of animals. *See* 9 C.F.R. § 2.11(a)(6). In 2017, Mr. Lowe attempted to establish a big cat cub petting operation in Las Vegas. His Las Vegas home was raided by local law enforcement

and at least two tiger cubs and a lemur were confiscated. Mr. Lowe was charged with three counts of unlawful possession of wild animals, which led to his arrest on April 4, 2018.[6] Mr. Lowe entered a "submit" plea, received a suspended sentence for one year, and was assessed $2500 in restitution per count and given a stay out of trouble order.[7] Lowe was also charged with one count of doing business without a license, to which he pleaded *nolo contendere*.[8] The Las Vegas Municipal Court found him guilty on April 5, 2018, and issued a suspended jail sentence, $2500 in restitution, and a stay out of trouble order.[9] On April 12, 2018, Dave Bailey from the Las Vegas City Attorney's Office confirmed to PETA via telephone that these charges would not be dismissed and that ownership of the confiscated animals had been transferred to the City of Las Vegas. Smith Decl., ¶ 25. On November 14, 2018, a bench warrant was issued for Lowe's arrest after he failed to appear in Las Vegas Municipal Court for a hearing related to these charges, and as of the date of this motion, that warrant was *still active*.[10] Smith Decl., ¶ 27.

---

[6] *See* Las Vegas Municipal Court, Case No. C1184662A – Jeffery (*sic*) Lee Lowe (Nov. 16, 2017), attached to the Smith Decl. as Exhibit 18; Las Vegas Municipal Court, Case No. C1184663A – Jeffery (*sic*) Lee Lowe (Nov. 16, 2017), attached to the Smith Decl. as Exhibit 19; Las Vegas Municipal Court, Case No. C1184664A – Jeffery (*sic*) Lee Lowe (Nov. 16, 2017), attached to the Smith Decl. as Exhibit 20.

[7] A "submit" plea, otherwise known as a submittal, is when the defendant submits to the authority of the court on a specific charge and is ordered to stay out of trouble for a fixed period of time, and comply with other court-ordered requirements, such as paying a fine. Unlike in other jurisdictions, a submittal in Las Vegas Municipal Court is akin to a stayed adjudication in that the court also imposes a suspended sentence, and may reduce the charge to a lesser offense instead of dismissing it entirely. *See* Pandullo Law, Plea Negotiations, *available at* https://web.archive.org/web/20171119223342/http://www.pandullolaw.com:80/criminal-defense/plea-negotiations/, attached to the Smith Decl. as Exhibit 21; Mr. Lowe's pleas are indicated in Exhibits 18-20 to the Smith Declaration.

[8] *See* Las Vegas Municipal Court, Case No. C1185093A – Jeffery (*sic*) Lee Lowe (Dec. 14, 2017), attached to the Smith Decl. as Exhibit 22.

[9] *Id.*

[10] City of Las Vegas Marshal – Warrant Search, Jeffery L. Lowe, *available at* https://secure3.lasvegasnevada.gov/eWarrantLookup/wanted_poster.aspx? HistNo=100374870&CaseNo=%27C1185093A%27,%27C1184664A%27 ,%27C1184663A%27,%27C1184662A%27 (last visited May 21, 2019), attached to the Smith Decl. as Exhibit 23.

# ARGUMENT

## I. Defendants Should Be Sanctioned for Willfully Violating the Preservation Order and Jeopardizing the Integrity of these Proceedings.

"Litigation is not a contest to see how much trouble you can cause your opponents. Those who treat it as such do so at their peril." *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987). Specifically, litigants who act in bad faith, as Defendants have here, may be sanctioned for their misconduct. *Chambers v NASCO, Inc.*, 501 U.S. 32, 44 (1991).

When a party's misconduct is willful and lesser sanctions will not suffice, dispositive sanctions are appropriate. "[I]f the circumstances justify imposition of the ultimate penalty"—here, a default judgment—the "appropriateness of lesser sanctions need not be explored." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018). The Court is not required to find prejudice or impose graduated sanctions. *Id.*

### A. The Court May Issue a Default Judgment to Sanction Defendants' Bad Faith, Willful Misconduct Under Its Inherent Authority.

The Court's power to sanction litigants is inherent and derives from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). To impose sanctions under its inherent authority, a "court must first make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.'" *Fuery*, 900 F.3d at 463-64 (quoting *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012)).

Bad faith abounds here, as it did in *Fuery*. There, the Seventh Circuit upheld the trial court's decision to issue defendant, an off-duty police officer who had been involved in a road rage incident, a judgment notwithstanding the verdict, denying plaintiffs a multi-million dollar jury award as a sanction for the plaintiffs' and their attorney's repeated misconduct during the trial, including: a "lack of candor" regarding the release of evidence to the media; and violations of the

12

court's orders granting motions in limine. *Fuery*, 900 F.3d at 455. The lack of candor caused the court to spend "significant time and resources trying to unravel the origin of the disclosure" and ultimately the court did not find counsel's "explanation to be credible." *Id*. at 460.

Here, as there, Defendants chose not to act with candor, they have offered incredible explanations for their misconduct, and in doing so are causing a drain on the Court's resources.[11] Specifically, they lied by omission, withholding evidence of their transfer of the Big Cats to Mr. Lowe for more than a month, knowing that each day PETA was engaging in costly pre-trial preparation, and then springing the information in a court filing two weeks prior to the deadline to serve expert reports. In an attempt to shield each other, Mr. and Mrs. Stark lied about what they knew about their respective contumacious conduct. T. Stark Tr. 20:17-22:16 (testifying Red River Safari does not exist); M. Stark Tr. 46:10-47:13 (testifying Red River Safari's job postings and web presence must be fake), attached to the Smith Decl. as Exhibit 25; ECF No. 204-12 (Defendants' interrogatory responses regarding Red River Safari, falsely stating "no responsive information exists" regarding plans to transfer animals between Defendants and Red River Safari, that Red River Safari possesses no assets, has no animals or plans to acquire any animals, has been party to no transactions, has no current or intended location, and has no officers, staff, volunteers, or other personnel).

---

[11] The misconduct at issue does not appear to be the only instance of false and misleading testimony by Defendants. For example, while Mr. Stark denied purchasing Big Cats during the hearing for a Temporary Restraining Order, ECF No. 46-1 at 87:19-88:13, he admitted to purchasing hybrid Big Cats during his deposition. *See* T. Stark Tr. 278:20-281:10, 282:5-19, 291:4-292:2, 302:25-303:14, attached to the Smith Decl. as Exhibit 24. Incomplete text messages produced by Defendants also appear to show examples of Mr. Stark purchasing Big Cats from third parties. *See, e.g.*, ECF No. 184-5, at 27, 35-41, 73-77, and 102-105. PETA reserves the right to move for additional sanctions against Defendants after it receives the results of the April 10, 2019, inspection of Mr. Stark's electronic device that are currently in the possession of Defendants' counsel.

They are trying to mislead the Court about their motives, offering a nonsensical justification for their unjustifiable misdeed. *See* ECF No. 205, at 10. In fact, Defendants' flimsy explanation only raises more questions. Since the transfer documents are dated the same day that Mr. Stark reportedly suffered a heart attack at 2:00 a.m., did Mr. Lowe bring the transfer papers to the hospital? If the transfer was truly justified, why would Mr. Stark conceal it from his wife and from his corporation's lawyer? Was Mr. Stark not also acting on WIN's behalf when he transferred the Big Cats that, prior to this litigation, were central to the organization's revenue raising operation, the Tiger Baby Playtime events?

Because "dishonesty to the Court alone is sufficient to merit dismissal of a claim," *Fuery*, 900 F.3d at 467 (citation omitted), Defendants' deception supports a sanction of default judgment here.[12]

Even if Defendants had been forthcoming about their misconduct, dispositive sanctions would still be merited to address Defendants' blatant violation of the Court's Preservation Order. In *Fuery*, plaintiffs' counsel elicited testimony the court had ruled inadmissible, and although plaintiffs played no role in this misconduct, their attorney's defiance cost them millions of dollars. Here, sanctions are even more justified because the violation of the Preservation Order can be attributed directly to Defendants' willful misconduct. In *Fuery*, plaintiffs' counsel snuck in inadmissible evidence to influence the outcome of the trial in her clients' favor. Here, to deny PETA a significant portion of the remedy it seeks, Defendants enlisted Mr. Lowe to assume legal control of the evidence that the Court had ordered preserved. Here, as there, this bad faith violation of the Court's order merits terminal sanctions.

---

[12] Defendants' deception is not new and the Court can, and should, consider the latest misconduct against the backdrop of Defendants' prior bad faith. As PETA has explained, Defendants lied about the circumstances surrounding the premature separation of a Big Cat Cub from her mother. ECF No. 193.

**B.      Defendants' Defiance Will Not Be Deterred by Lesser Sanctions.**

Defendants' latest misconduct follows a well-documented history of deceit. Together, their current and prior misconduct taint the entirety of these proceedings, and further justifies the imposition of a default judgment. While the circumstances are such that the Court need not explore or impose lesser sanctions, *Fuery*, 900 F.3d at 464, the docket shows, as collected above, that Defendants have been hit with lesser sanctions and each time they have engaged in further obstreperous misconduct, undeterred. Lesser sanctions simply have not worked.

Further evidence that lesser sanctions would be futile may be found in the fact that Defendants could purge themselves of their contempt by convincing their co-conspirator to return the Big Cats to WIN's inventory, and they have not. This would be a particularly reasonable step to take if, as Mr. Stark claims, the transfer was truly a reaction to his failing health, staffing shortfalls, and an inability to secure veterinary care. As Mr. Stark's health scare has apparently passed, and he has had another month to recruit a new veterinarian, he could have regained control over the Big Cats. The fact that he has not—indeed, that he has signaled to the Court, through counsel, that he intends to move to dismiss the case as moot, ECF No. 205, at 10—demonstrates that the transfer was made in bad faith to attempt to evade the Court's authority and jurisdiction. It is clear that Defendants' misconduct will continue to escalate until they have found a way to wriggle free from this lawsuit. Because Defendants' current misconduct was willful, and is part of a pattern of bad faith that has persisted despite lesser sanctions, default judgment is the appropriate sanction now.

**C.      The Court Should Order the Big Cats Transferred to Reputable Sanctuaries.**

Crucially, to ensure the safety of the Big Cats and to grant PETA meaningful relief, the Court's order for default judgment should also include a permanent injunction against Defendants and Mr. Lowe terminating their ownership and possessory rights with respect to the Big Cats and

issuing and order appointing a guardian ad litem to determine the most appropriate placement for the forfeited animals, consistent with the remedy PETA seeks in the Complaint.[13] Anything less would leave the Big Cats at risk of further serious harm, and would reward Defendants' and Mr. Lowe's misconduct. This is especially crucial in light of Defendants' representations to the Court, discussed above, that Tim Stark is unable to provide care for the Big Cats because of his health issues and because he has been unable to secure the services of an attending veterinarian, and in light of Mr. Lowe's history of interfering with PETA's ESA litigation.

### D. Defendants Should Be Required to Compensate PETA for All Costs Incurred Since the Unlawful Transfer Through the Adjudication of this Motion.

In addition to issuing dispositive sanctions, courts can exercise their inherent powers to sanction misbehaving litigants by awarding fees to compensate the injured party. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature.").

Here, a fees award is particularly merited because Defendants concealed their misconduct for more than a month, knowing that during this month PETA was engaging in costly pre-trial preparation. In light of this, the Court should not only award PETA the costs and fees incurred in bringing and litigating this motion, it should award PETA the expenses incurred in preparing this case during the month that Defendants hid their malfeasance. This would compensate PETA for resources wasted by Defendants' decision to conceal their willful spoliation of the evidence central to this suit.

---

[13] If this relief is granted, PETA will provide any evidence the guardian ad litem requires to decide the appropriate placement for the Big Cats.

16

**II.**     **This Court Can and Should Hold Defendants in Contempt and Order Mr. Lowe to Show Cause Why He Should Not Be Held In Contempt.**

In addition to sanctioning Defendants' misconduct, this Court can and should hold Defendants in contempt and order Mr. Lowe to show cause why he should not be held in contempt.

**A.**     **Defendants Should Be Held in Contempt for Violating the Court's Preservation Order.**

The Court may find Defendants are in contempt if clear and convincing evidence shows that Defendants violated a court order. *Bailey v. Roob*, 567 F.3d 930, 934-35 (7th Cir. 2009).

Specifically, as applied here, the evidence must show four things: (1) that the Preservation Order set forth an unambiguous command; (2) that Defendants violated that command; (3) that their violation was significant—that is, that Defendants did not substantially comply with the Preservation Order; and (4) that Defendants failed to take steps to reasonably and diligently comply with the Preservation Order. *Id*. at 935 (citing *Prima Tek II, LLC v. Klerk's Plastic Industries, B.V.*, 525 F.3d 533, 543 (7th Cir. 2008)).

A finding of willfulness is not required. *Id*.; *see also F.T.C. v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009) (contempt may be found if a "party has not been reasonably diligent and energetic in attempting to accomplish what was ordered.").

**1.**     **The Preservation Order Unambiguously Required Defendants to Retain Possession, Custody, and Control Over the Big Cats They Possessed When the Order Was Issued.**

The Preservation Order could not be clearer. It requires Defendants, who were then Respondents, to "preserve all tangible and documentary evidence relating to (***and including***) the the tigers, lions, and hybrids thereof in Respondents' possession, custody, and control." (Emphasis added.)

Indeed, for nearly two years, Defendants did not question the clarity of the Preservation Order. That Defendants chose not to petition the Court for modification or clarification is significant.

Where a litigant fails to petition for modification of clarification of an order he claims is unclear, he "cannot argue that [the Court's order] is too vague to be enforced. *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 718 (7th Cir. 1987), *amended*, (7th Cir. May 27, 1987). Here, Defendants "acted at their peril" when they "undertook to make their own determination of what the [Preservation Order] meant." *McComb v. Jacksonville Paper Co*., 336 U.S. 187, 192 (1949).

Defendants tortured the English language in an effort to claim that the Preservation Order did not mean what it plainly said. They claim they could not possibly be required to preserve the Big Cats because they are animals and will age. But the Preservation Order does not require Defendant to prevent the Big Cats from aging. It requires Defendants to preserve the Big Cats. There is no interpretation of the clear language of the Preservation Order under which it would be permissible to transfer possession, custody, or control of the Big Cats, which is what Defendants have done.[14]

Further, Defendants cannot credibly argue that the Preservation Order only applies to Mr. Stark. The Preservation Order does not limit its reach only to the Defendant who holds the USDA license to exhibit the Big Cats. Rather, it binds each Defendant to the requirement to preserve all the Big Cats in their possession, custody, and control. Even if the Preservation Order distinguished between Defendants, each has culpability here, as they all owe a fiduciary duty to the corporate defendant—and to the Big Cats. *See, e.g.,* ECF No. 210-5 (Wildlife In Need & Wildlife In Deed, Inc., IRS Form 990, 2016).

---

[14] While there is no question of the Court's intent here, PETA notes numerous cases exist in which courts hold parties responsible for preserving evidence capable of aging or expiring. *See, e.g.*, *Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-cv-3038, 2016 WL 4197573, at *3-*6 (C.D. Ill. Aug. 9, 2016) (finding party violated discovery obligations with regard to farmland and seeds by transferring title and conducting farming operations, and granting opposing party's motions for contempt and default judgment); *Cooper v. United Vaccines, Inc.*, 117 F. Supp. 2d 864, 875 (E.D. Wis. 2000) (holding a party responsible for preserving a vaccine).

### 2.     Defendants Violated the Preservation Order.

There can be no doubt that Defendants violated the Preservation Order. When the Preservation Order was entered, Defendants' records showed that they had approximately two dozen Big Cats in their inventory. Today these records show that they have none. The transfer paperwork and Defendants' own admissions establish, by clear and convincing evidence, that the Big Cats formerly held under Mr. Stark's USDA license are now held under Mr. Lowe's.

### 3.     Defendants' Violation of the Preservation Order Was Significant.

Defendants' violation of the Preservation Order was significant. Defendants made no effort to substantially comply with the Preservation Order's command to preserve the Big Cats in their possession, custody and control. Deciding it would be clever to divest themselves of their interest in the Big Cats, Defendants transferred title in all of them to Mr. Lowe. Mr. Stark is so convinced that the transfer is complete that he claims this suit should be dismissed as moot.

Mrs. Stark and WIN fare no better. They were on notice, through letters sent from PETA's counsel to their own, that Mr. Stark and Mr. Lowe appeared to be forming a partnership that, in all likelihood, could lead to the transfer of the Big Cats. *See, e.g*., ECF No. 204 Ex. 8. Assuming they truly knew nothing of this venture, which strains credulity, Defendants chose not to investigate the development despite affirming interrogatory responses on it under penalty of perjury. ECF No. 204, Ex. 12. Rather than require Mr. Stark not to transfer the Big Cats to Mr. Lowe, Defendants purportedly left the two to their own devices. They made no attempt to comply with the Preservation Order.

They had the same response when PETA challenged the absurdity of Defendants' newly narrowed interpretation of the scope of the Preservation Order. Defendants claimed that the Preservation Order was subject to differing interpretations and failed to move to clarify it, long after having negotiated its language and consenting to its entry as an order of the Court in a

proceeding the entire purpose of which was to prevent the result that now has come to pass. As a result, they stood by Mr. Stark as he transferred away control of the Big Cats, in violation of the plain language of the Preservation Order.

Now, unless the Court intervenes, Mr. Lowe will be free to transfer the Big Cats out of the Southern District and out of Indiana. He will be free to intermingle the Big Cats with his own, to pass off Defendants' Big Cats as his own, and to avoid identification of the cats at issue. Forcing PETA and the Court to pursue Mr. Lowe to regain control over the Big Cats is the exact opposite of what the Preservation Order was meant to achieve.

### 4. Defendants Failed to Take Steps to Comply with the Preservation Order.

Defendants had to keep the Big Cats in their inventory. They chose not to. The transfer paperwork and Defendants' own admissions provide the clear and convincing evidence necessary to establish that Defendants elected to divest themselves of their Big Cat inventory.

Defendants significantly violated the Preservation Order's unambiguous command, and made no serious effort to comply. This is contempt in its purest form.

### B. Mr. Lowe Should Be Required to Show Cause Why He Should Not Be Held in Contempt for Aiding and Abetting.

Courts have the power to punish non-parties who knowingly aid and abet a party's violation of a court order. If courts lacked such power, "named parties could easy thwart the [court's orders] by operating through others." *S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008). The power to punish non-party contempt confers personal jurisdiction over non-resident contemnors who knowingly and actively aid and abet a party's violation of a court's order. *Id*. at 673 (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)).

Thus, for the Court to find that Mr. Lowe is in contempt, the evidence must show two things: (1) that he was aware of the Preservation Order; and (2) that worked in active concert or participation with Defendants to violate it. Fed. R. Civ. P. 65(d)(2)(C).

### 1. Mr. Lowe Had Actual Knowledge of the Court's Order.

Mr. Lowe had actual knowledge of the Preservation Order. He received notice of it on February 19, 2019, when he was copied on a letter sent from PETA's counsel to Mr. Stark and Defendants' counsel, addressing the apparent collaboration between Mr. Stark and Mr. Lowe. See Letter from Asher Smith to Clay Culotta and Tim Stark (Feb. 19, 2019), attached to the Smith Decl. as Exhibit 26. The letter not only lays out the specific terms of the Preservation Order, it puts Mr. Lowe on notice that if "a partnership exists" between Mr. Lowe and Mr. Stark, "Mr. Lowe and Red River Safari are now bound by the evidence preservation and preliminary injunction orders entered by Judge Richard L. Young in this case." *Id.*

The evidence establishes that Mr. Lowe had actual knowledge of the Preservation Order and violated it.

### 2. Mr. Lowe Worked in Active Concert or Participation with Defendants to Violate the Preservation Order.

The evidence further shows that Mr. Lowe was actively aiding and abetting Defendants' violation of the Preservation Order.

First, Mr. Lowe not only voluntarily accepted title of Defendants' Big Cats, he apparently facilitated the transfer. The transfer paperwork is dated April 11, 2019, the day Mr. Stark was reportedly hospitalized after suffering a heart attack at 2:00 a.m. Since it is highly unlikely that Mr. Stark thought to grab transfer paperwork on his way to the hospital, Mr. Lowe must have taken affirmative steps to orchestrate the transfer, either by bringing the transfer paperwork to Mr. Stark's bedside or completing it at his direction elsewhere.

Second, Mr. Lowe joined Mr. Stark in concealing the transfer for more than month.

Third, Mr. Lowe and Mr. Stark are actively engaged in a partnership to develop a new zoo-type facility in Oklahoma. They have announced their intention to combine their inventories, and the transfer paperwork indicates on its face that the Big Cats may be physically moved at a later date. *See* ECF Nos. 203, 210. Absent Court intervention, the Defendants and Lowe are likely to transfer the Big Cats to one or more of Lowe's facilities in Oklahoma.

Finally, Mr. Lowe is well aware, given his prior involvement in taking possession of Big Cats at issue in PETA's ESA litigation, that he could at any time purge himself of his contempt by relinquishing the Big Cats to the Court. If he had accepted the Big Cats in good faith, this is what he would do upon learning that he was duped into aiding Defendants' violation of the Preservation Order. Instead, as he made clear, he has no respect for court orders that restrict the exploitation of Big Cats. He would not abide by such an order, and would take the matter all the way "to the Supreme Court." Lowe Tr. 115:2-12.

The evidence shows that Mr. Lowe knowingly and actively conspired with Mr. Stark to violate the Preservation Order. Together they conspired to blow up this case. Together they should answer for their contempt.

## CONCLUSION

For the reasons set forth above, PETA respectfully requests that the Court grant its motions and enter orders as described above.

Dated: May 22, 2019

Respectfully Submitted,

*/s/ Brian Lewis*
Brian W. Lewis
  Brian.Lewis@btlaw.com
Paul T. Olszowka
  Paul.Olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400

22

Chicago, Illinois 60606
Telephone: 312- 357-1313
Facsimile: 312-759-5646

Caitlin Hawks
  CaitlinH@petaf.org
Gabriel Walters
  GabeW@petaf.org
Asher Smith
  AsherS@petaf.org
PETA FOUNDATION
1536 16th Street, NW
Washington, DC  20036
Telephone: (202) 483-7382
Facsimile: (202) 540-2208

*Attorneys for People for the Ethical
Treatment of Animals, Inc*

## CERTIFICATE OF SERVICE

I, Brian Lewis, an attorney, certify that on May 22, 2019, the foregoing document was served via the Court's ECF system to the attorney of record for the Defendants in this case, J. Clayton Culotta, 815 E. Market Street, New Albany, IN 47150, clayculotta@culottalaw.com, via electronic mail to Defendant Timothy L. Stark, pro se, 3320 Jack Teeple Road, Charlestown, IN 47111, wildlifeinneed@aol.com; and via electronic mail, U.S. Mail, and Federal Express to non-party Jeff Lowe, 25803 N County Road 3250,Wynnewood, OK 73098, 21619 Jimbo Road, Thackerville, OK 73459, returnprice@hotmail.com.

Dated: May 22, 2019

*/s/ Brian Lewis*
Brian W. Lewis
  Brian.Lewis@btlaw.com
Paul T. Olszowka
  Paul.Olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312- 357-1313
Facsimile: 312-759-5646

Caitlin Hawks
  CaitlinH@petaf.org
Gabriel Walters
  GabeW@petaf.org
Asher Smith
  AsherS@petaf.org
PETA FOUNDATION
1536 16th Street, NW
Washington, DC  20036
Telephone: (202) 483-7382
Facsimile: (202) 540-2208

*Attorneys for People for the Ethical Treatment of Animals, Inc.*

24