UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 4:17-cv-00186-RLY-DML |
| WILDLIFE IN NEED AND WILDLIFE IN DEED, INC., TIMOTHY L. STARK, MELISA D. STARK, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| MELISA D. STARK, TIMOTHY L. STARK, WILDLIFE IN NEED AND WILDLIFE IN DEED, INC., | ) ) ) ) ) | |
| Counter Claimants, | ) ) | |
| v. | ) ) | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Counter Defendant. | ) | |

**ENTRY ON PLAINTIFF'S MOTIONS RELATED TO EVIDENCE PRESERVATION**

This case concerns the treatment of certain animals under the Endangered Species Act of 1973, 16 U.S.C. § 1531, *et seq.* ("ESA"). People for the Ethical Treatment of Animals, Inc. ("PETA") allege Melisa Stark, Tim Stark, and Wildlife in Need and

1

Wildlife in Deed, Inc. ("Defendants") have violated the ESA's prohibition against harassing, harming, and wounding endangered animals.

This Entry addresses several recent motions related to the preservation of tigers, lions, and hybrids ("Big Cats") within Defendants' possession. In these motions, PETA argues Defendants have violated the court's preliminary injunction and the agreed upon preservation order by transferring title of the Big Cats to Jeff Lowe, a nonparty. Defendants argue neither order prevents them from transferring ownership and possession of the animals. As will be explained below, the preservation order requires Defendants to keep the Big Cats at WIN; the preliminary injunction forbids declawing and using the Big Cat Cubs in public encounters; and Mr. Lowe is subject to both orders. However, the court will deny PETA's request for sanctions and contempt at this time.

I.  **Background**

Wildlife in Need and Wildlife in Deed, Inc. ("WIN") owns and exhibits exotic animals at its facility in Charlestown, Indiana. (*See* Filing No 89, Order Granting Preliminary Injunction at 2 – 3). The Starks operate WIN together, though Mr. Stark does most of the heavy lifting: he oversees the day-to-day operations, manages the animal care, acts as the primary caregiver for the animals, and supervises volunteers. (*Id.* at 3). Mrs. Stark assists Mr. Stark with all of those tasks. (*Id.*). According to the Starks, WIN is a nonprofit organization dedicated to the rehabilitation and release of endangered species. (Filing No. 205-10, WIN Webpage). PETA sees things differently. According to PETA, WIN is an unaccredited roadside zoo that exhibits exotic animals for financial

gain. (*See* Filing No. 1, Complaint ¶ 25). This lawsuit seeks to end Defendants' purported unlawful practices under the ESA. (*See id.*).

The court entered two separate orders early in the case to preserve the status quo throughout this litigation. First, on September 18, 2017, the court issued an agreed-upon preservation order (the "Preservation Order"). That order required Defendants to "preserve all tangible and documentary evidence relating to (and including) the tigers, lions, and hybrids thereof in [Defendants'] possession, custody, and control." *See People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc. et. al*, No. 4:17-mc-00003-RLY-DML (S.D. Ind. 2017) (Filing No. 27). Second, on February 12, 2018, the court issued a preliminary injunction. (*See* Preliminary Injunction Order). The injunction restrained Defendants from declawing any Big Cats, using Big Cat Cubs in public encounters, and prematurely separating Big Cat Cubs from their mother during the pendency of this action. (*Id.* at 17 – 18).

Recent events have led to a dispute over those two orders. In February of 2019, a news station in Oklahoma revealed that Mr. Stark and Jeff Lowe planned to open a new zoo in Thackerville, Oklahoma called Red River Safari. (Filing No. 204-4, News Article). Mr. Lowe is the principal owner of Greater Wynnewood Exotic Animal Park, LLC, another zoo facility in Oklahoma.[1] (Filing No. 204-5, Deposition of Jeff Lowe at 101:5 – 8); *see also Big Cat Rescue Corp. v. G.W. Exotic Animal Memorial Foundation*,

---

[1] PETA asserts that this facility is to be (or already was) liquidated this year. (Filing No. 203, PETA' Brief in Support of Motion to Clarify Orders at 4).

No. 14-377-M, 2017 WL 3944291 at *4 (W.D. Okla. Sep. 7, 2017). Red River Safari confirmed this collaboration in a Facebook post:

> Okay folks, its [sic] time to announce the collaboration of the decade. Tim Stark and the Lowe family have joined forces! This multi-state partnership will own and operate two of the largest private zoos in the United States.
>
> This collaboration will combine not only the largest animal inventories in private hands, but also joins two of the most proactive zookeepers in the county to defend private animal ownership.

(Filing No. 204-1, February 19, 2019 Facebook Post). Red River Safari also advertised several employment positions available to begin during the summer. (Filing No. 204-6, Instagram post seeking an attorney); (Filing No. 204-7, Instagram post seeking a "Veterinary Technologist").

Mr. Stark initially deflected questions related to Red River Safari in his deposition. (*E.g.* Filing No. 203-1, Deposition of Tim Stark at 22:12 – 17 ("So I'll tell you straight up right now, Red River Safari, I'm not going to ask -- answer questions about it. It's none of your damn business, and it's just that simple. It does not exist. . . ."). However, he admitted that he has already transferred some of his animals to Oklahoma to help Mr. Lowe, (*Id.* at 24:22 – 25:6), he has traveled to Oklahoma to help excavate the Red River Safari property, (*Id.* at 28:1 – 11), and he has discussed transferring the Big Cats with Mr. Lowe. (*Id.* at 34:11 – 17). Mrs. Stark denied knowing any information concerning Red River Safari. (Filing No. 203-2, Deposition of Melissa Stark at 53:7 – 15).

Based on the social media posts and the Starks' responses, PETA filed a Motion to Clarify the Preliminary Injunction and Evidence Preservation Orders on April 30, 2019. (Filing No. 201). Soon after PETA filed that motion, Mr. Stark transferred ownership of

4

the Big Cats to Mr. Lowe. (Filing No. 229-1, Transfer Documents). This prompted PETA to file an Emergency Motion for a Preservation Order (Filing No. 216), a Motion for Sanctions (Filing No. 218), a Motion for Contempt (Filing No. 219), a Motion for Order Regarding Ownership of Big Cats (Filing No. 220), and a Motion for Order to Show Cause as to Jeff Lowe (Filing No. 221)—all on May 22, 2019. PETA filed a supplemental motion, designating more evidence, on June 12, 2019. (Filing No. 235).

## II.  Discussion

The crux of PETA's motions are that Defendants and Mr. Lowe conspired to transfer the Big Cats to Oklahoma in violation of the Preservation Order and Preliminary Injunction. PETA seeks emergency injunctive relief as well as contempt and sanctions for Defendants' actions. They also seek an order prohibiting Mr. Lowe from disposing of the Big Cats during this litigation. Defendants argue that neither order prevents them from transferring the Big Cats.[2]

### A.  The Preservation Order Prevents Defendants from Transferring the Big Cats

The court's Preservation Order requires Defendants to "preserve all tangible and documentary evidence relating to *(and including)* the tigers, lions, and hybrids thereof in [their] possession, custody, and control." (Preservation Order at 1) (emphasis added). The plain language within the parenthesis brings the Big Cats within the scope of the

---

[2] They also take the position that the transfer of title to the Big Cats moots the present controversy because Defendants no longer own the Big Cats. But they still are responsible for preserving them for this litigation, and there very much exists a dispute between PETA and Defendants.

5

order, and so Defendants are required to preserve the Big Cats throughout this litigation. *See Black's Law Dictionary* (11th ed. 2019) (defining "include" as "[t]o contain as a part of something"). This means that Defendants must protect and maintain the Big Cats in their current state absent a court order that says otherwise. *See Merriam-Webster's Collegiate Dictionary* (11th ed. 2006) (defining "preserve" as "protect" and "maintain"). This also means that Defendants or any party acting in concert with Defendants must not transfer, move, or relocate any Big Cat before this litigation comes to an end. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting courts can issue sanctions when a party violates the duty to preserve evidence where it knows litigation was imminent).

Defendants argue that the Big Cats are not "tangible" evidence. But they are "tangible" because they are capable of being touched. *Merriam-Webster's Collegiate Dictionary* (11th ed. 2006) (defining "tangible" as "capable of being perceived especially by sense of touch"). Moreover, the purpose of the preservation order was to preserve the animals—themselves. It makes little sense to conclude otherwise especially since this case is about the alleged harm suffered by the Big Cats. Accordingly, Defendants shall abide by the Preservation Order.

### B. The Preliminary Injunction Prevents Defendants from Declawing and Using any Big Cat Cubs in Public Encounters

The preliminary injunction forbids two practices during this litigation. First, the injunction forbids Defendants from declawing any Big Cats during the pendency of this action. (Preliminary Injunction at 17). Second, it forbids Defendants from using any

6

Big Cat Cubs in public encounters or from prematurely separating Big Cat Cubs from their mothers without medical necessity. (Preliminary Injunction at 18). Those commands are explained in more detail in the full order.

### C. Mr. Lowe Shall Abide by the Preservation Order and Preliminary Injunction

A court order that binds a defendant may also bind a nonparty. *See* Fed. R. Civ. P. 65(d)(2)(C); *see also S.E.C. v. Homa*, 514 F.3d 661, 674 – 75 (7th Cir. 2008) (noting an injunction binds nonparties who act with the named party). For the court to exercise this power, the nonparty must have actual knowledge of the court's order and must be acting in concert with the named party. *Homa*, 514 F.3d at 675; *see also ClearOne Communications, Inc. v. Bowers*, 651 F.3d 1200, 1215 – 16 (10th Cir. 2011).

The record shows that Mr. Lowe has actual knowledge of the court's orders and is acting in concert with Mr. Stark. As to knowledge, Mr. Lowe acknowledged he was aware of the preliminary injunction against Mr. Stark when PETA took his deposition:

> Q: Does learning the court order barring Wildlife in Need from conducting its tiger baby playtime events make you any less likely to conduct similar events at Greater Wynnewood Exotic Animal park?
>
> A: Absolutely not. And I'm surprised, quite frankly, that Wildlife in Need abides by that. I would have taken it to the Supreme Court myself. PETA stepping in and forbidding people from conducting legal activities blows my mind.

(Filing No. 217-1, Deposition of Jeff Lowe at 115:2 – 12). In a letter to PETA's counsel, Mr. Lowe acknowledged that he is waiting until the court issues a ruling on PETA's clarification motion as to the Preservation Order before deciding whether to move the Big

7

Cats. (Filing No. 233-4, Lowe Letter to Lewis on 5/22/2019 at 2).[3] And text messages between Mr. Lowe and Mr. Stark demonstrate that Mr. Lowe is aware of the orders in this case:

> Lowe: What [is PETA] asking? For monetary judgment? Or do they seriously think a court will demand that you close your animal business?
>
> Stark: They want my big cats taken away from me
>
> Stark: They know that's how I make the majority of my money
>
> Lowe: So, if they ever do, you lease me cages to move some of my cats there.
>
> Lowe: Problem solved
>
> Lowe: You now [sic] it
>
> \* \* \*
>
> Lowe: And you just sign your cats over to me, so you don[']t loose [sic] your cat[s]
>
> \* \* \*
>
> Lowe: We need to formulate a plan that nobody could possibly see coming.
>
> Stark: Yep
>
> \* \* \*
>
> Stark: Then just sell all of the animals and put a closed sign up for 60 days until the bankruptcy goes through and then reopen under someone else's name and new zoo name
>
> Stark: Live animals or a zoo is not tangible
>
> Stark: They cannot order you to keep them

---

[3] Defendant's counsel certified that the letter was a true and accurate copy of Lowe's letter to Plaintiff's Counsel. (Filing No. 233, Declaration of [Defendant's Counsel] ¶ 8).

Lowe: Yeah, lets chat tomorrow if you have time

(Filing No. 238-2, Text messages between Mr. Stark and Mr. Lowe at 4 – 7); (*See id.* at 17) ("Lowe: They think they can tell me what to do because they got a temporary injunction against you? Just wait till [sic] they find out [our] secret. Lol").

As to the second inquiry, the above text messages are likely enough to establish Mr. Lowe is acting in concert with Mr. Stark. On top of that, it is undisputed that Mr. Stark transferred title to all of the Big Cats to Mr. Lowe. (*See* Transfer Documents). The two appeared in a picture together attached to a social media post announcing the "collaboration of the decade" and explaining that they would be "joining forces." (*See* February 19, 2019 Facebook Post). Although Mr. Stark denied any relationship between WIN and Red River Safari in his deposition, he admitted that he had already brought animals to Mr. Lowe in Oklahoma. (Stark Dep. 24:22 – 25:10). Furthermore, the text messages reveal that Mr. Lowe and Mr. Stark have had—at the very least—discussions about forming some sort of partnership in Oklahoma:

> Lowe: I'm open to most anything. I realize that a good place like I could build would make good money. A bad*ss place that we could build would make bad*ss money. So there's no real loss to take a partner on that thinks and works as hard as you do.
>
> Lowe: What would you be interested in?
>
> Stark: I'd like to see us make sh*tloads of money so we would have enough to just laugh at the [Animal Rights] and tell them to go f*ck themselves and ROCK the exotic animal world.
>
> \*   \*   \*

> Lowe: Hey, wouldn't you moving here also move all the Federal appearances to the Oklahoma Federal Court? This court hates the [Animal Rights] groups and the former lieutenant Governor sued [Animal Rights Organization] a few years ago.
>
> Stark: I'm not sure

(Text messages between Mr. Stark and Mr. Lowe at 9, 12). These text messages were in 2018—well before PETA's most recent filings. This all shows that Mr. Lowe is aware of the court's orders and is acting in concert with Mr. Stark. Accordingly, Defendants and Mr. Lowe shall abide by the preliminary injunction and preservations orders.

### D. PETA is not Entitled to Sanctions, Contempt, and Ownership of Big Cats, or an Order to Show Cause

Federal courts have wide discretion to impose sanctions, order contempt, and, if necessary, enter a default judgment when a party consistently fails to comply with court orders. *See e.g. Fuery v. City of Chicago*, 900 F.3d 450, 463 – 64 (7th Cir. 2018). This power stems from a court's inherent authority to demand respect for the judicial process. *See Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993); *Fuery*, 900 F.3d at 463. However, contempt is a serious remedy, often not imposed until a court has no other options. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (noting contempt is a "severe remedy" and should be imposed only when those enjoined receive explicit notice of what conduct is outlawed).

The record does Defendants and Mr. Lowe no favors. The text messages between Mr. Stark and Mr. Lowe are concerning. So too is Defendants' candor about Red River Safari, and PETA's assertions that this case is similar to one in Florida where a zookeeper allegedly transferred cats to Mr. Lowe's Oklahoma facility without court approval.

*People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-cv-2899-T-36AAS (M.D. Fla. Mar. 2, 2018) (Filing No. 230 at 4) (noting the defendants had moved the majority of their tigers to Greater Wynnewood Exotic Animal Park in violation of the court's orders).

However, the court declines to order additional sanctions or to hold Defendants and Mr. Lowe in contempt for the transfer of title of the Big Cats *at this time*. Defendants at least had an arguable basis for believing they could transfer the Big Cats because the final Preservation Order did not contain an explicit requirement not to transfer the Big Cats as did a previous draft. (*See* Case No. 4:17-mc-00003, Filing No. 28-1, Draft of Preservation Order). Moreover, the text exchange between Mr. Stark and Mr. Lowe occurred over a year ago. Since then, both Mr. Stark and Mr. Lowe have represented that they will not transfer the Big Cats without court approval. (Filing No. 229, Defendant's Response at 2 (noting Defendants will abide by any order the court issues); Lowe Letter to Lewis on 5/22/2019 at 2 (noting Lowe currently intends on moving the Big Cats only with the blessing of the court)).

Though the court does not impose any additional sanctions, it is imperative that Defendants and Mr. Lowe follow the court's orders so that the judicial process runs its course. *Homa*, 514 F.3d at 675 ("More important, as citizens of the United States, Mr. Jones and Mr. Pollock were required, once they had adequate notice, to obey the order of a United States court directed at them and their activities.") (citation omitted).

### III. Conclusion

As fully explained above, PETA's Motion to Clarify the Preliminary Injunction and Preservation Orders (Filing No. 201) is **GRANTED**; PETA's Motion for Emergency Preservation Order (Filing No. 216) is **GRANTED IN PART**; PETA's Motion to Supplement the Record (Filing No. 235) is **GRANTED**; and PETA's Motion for Sanctions (Filing No. 218), Motion for Contempt (Filing No. 219), Motion for Order Regarding Ownership of Big Cats (Filing No. 220), and Motion for Order to Show Cause (Filing No. 221) are all **DENIED**.

Defendants and Mr. Lowe are **ORDERED** to abide by the court's preliminary injunction and Preservation Order. Among other commands in those orders, Defendants and Mr. Lowe shall preserve the Big Cats in this litigation and shall not transfer, relocate, sell, or remove the Big Cats from WIN's facility absent court approval. PETA is **ORDERED** to send a copy of this order to Jeff Lowe via certified mail.

**SO ORDERED** this 25th day of July 2019.

_[signature]_
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.