**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | ) | |
| TREATMENT OF ANIMALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WILDLIFE IN NEED AND | ) | Case No. 4:17-cv-00186-RLY-DML |
| WILDLIFE IN DEED, INC., | ) | |
| TIMOTHY L. STARK, | ) | |
| MELISA D. STARK, AND | ) | |
| JEFF LOWE, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PETA'S MOTION TO**
**COMPEL MR. LOWE'S PARTICIPATION IN DISCOVERY**

Plaintiff People for the Ethical Treatment of Animals, Inc. ("***PETA***"), through its

counsel, moves this Court, pursuant to Federal Rules 30(d)(2), 33, 34, and 37(a) and Local Rule

37-1, for an order that (1) requires Mr. Lowe sit for his full deposition, and answer questions

including, without limitation, those regarding any lions, tigers, or hybrids thereof ("***Big Cats***")

transferred between Mr. Lowe and any other Defendants in this litigation as well as questions

pertaining to the conditions of their confinement from the day they were transferred to Mr.

Lowe's facility to the present and (2) directs Mr. Lowe to respond without objection to PETA's

Interrogatories and Requests for Production. PETA also seeks its reasonable expenses and

attorney's fees incurred in bringing this Motion.

**PRELIMINARY STATEMENT**

This Court joined Jeff Lowe as a Defendant in this matter in January 2020. Since then,

Mr. Lowe has refused to respond seriously to PETA's written discovery. PETA sought to remedy

these deficiencies via live testimony. It was to no avail. After numerous threats to leave his

deposition early, he stormed out in under an hour. During the deposition, he refused to answer many questions. His reasons for not answering included easily disproven falsehoods and were frequently unreasonable. For example:

> **Q. Have any of these four lions had any medical issues since August 12, 2019?**
> A. That's also none of your business. Protected by HIPAA.

*See* May 27, 2020 Deposition Transcript of Jeff Lowe ("***Lowe Tr.***"), at 28:1-4, attached as **Exhibit 1**.

Mr. Lowe believes he is above this Court's authority. In his words: "I've already walked out of one of your depositions, right? Right? What did you do? What did you do to me that time? Nothing. . . . I will get up and leave. You can compel my testimony. They'll put sanctions on me, and I have no assets deliberately so you'll never get anything from me." Lowe Tr.13:14-16; 40:23-41:2. PETA requests this Court show Mr. Lowe his contempt for the judicial process has consequences.

## BACKGROUND

### A.    Mr. Lowe's Joinder in this Action

PETA deposed Mr. Lowe as a third party witness to this litigation on July 10, 2018. Mr. Lowe stormed out of that deposition while it was still ongoing after counsel for PETA asked him to affirm that he would not participate in the transfer of animals held under another individual's Animal Welfare Act ("***AWA***") license. ECF No. 204-5, at 122:3-125:16.

On July 25, 2019, this Court clarified a prior evidence preservation order and stated that neither Mr. Lowe nor any other Defendant may "transfer, move, or relocate any Big Cat before this litigation comes to an end." ECF No. 239.

On September 8, 2019, Mr. Lowe stated on Facebook that "[on] July 17th-18th Tim [Stark] pulled five newborn lion cubs, against a Federal Court Order and asked me to claim they

were born at my park." ECF No. 265-3. On September 13, 2019, Mr. Stark notified the court that

four cubs had been born at Wildlife in Need ("**WIN**") in Indiana and then transferred to Mr.

Lowe's facility in Oklahoma. ECF No. 260. On October 1, 2019, Mr. Lowe stated on Facebook

that Mr. Stark "lied to a Federal Judge by telling the judge that I instructed him to pull lion cubs.

What he didn't know is that [my wife] recorded him talking about pulling the cubs and asking

me to lie to the USDA. I also made sure to text Stark about him pulling cubs against a court

order. Those text messages have been turned over to the Indiana [Attorney General] and the

Judge in his Federal trial." ECF No. 265-4.

As a result, on January 17, 2020 this Court entered an order joining Mr. Lowe as a

required defendant. ECF No. 284. PETA filed an amended complaint joining Mr. Lowe on

January 29, 2020. ECF No. 285 ("**Amended Complaint**").

Mr. Lowe filed an Answer to PETA's Amended Complaint on February 25, 2020. ECF

No. 296.

**B.     PETA's Written Discovery Directed to Mr. Lowe**

On March 10, 2020, this Court asked the parties to confer and propose a schedule for

discovery, experts, witness and exhibit lists, and dispositive motions related to the claims

involving Mr. Lowe. ECF No. 305. Mr. Lowe refused to participate in this process. PETA, along

with Defendants Melisa Stark and WIN, through their counsel, and Mr. Stark (collectively,

"**WIN Defendants**") filed a proposed schedule on March 23, 2020. ECF No. 307.

PETA served Interrogatories and Requests for Production on Mr. Lowe on April 1, 2020.

*See* PETA's First Set of Interrogatories and Requests for Production to Defendant Jeff Lowe,

attached as **Exhibit 2**.

Mr. Lowe did not respond within the required 30 days. Fed. R. Civ. P. 33 (b)(2) and 34(b)(2)(A). Emails to Mr. Lowe eventually yielded a response. *See* Answers to First Set of Interrogatories and Request for Production from Defendant Jeff Lowe, attached as **Exhibit 3**. In his response, Mr. Lowe contradicted his prior claim to have recordings and text messages regarding the lion cubs transferred from WIN. *Id.*, at 1-2 ("I have no communications or recordings or test [sic] messages with Stark or my wife regarding the big cats [transferred from WIN] . . . I have no documents, videos, audio recordings, or communications with regard to these 4 lion cubs."). He also stated: "Any communication I have had with the Office of Indiana Attorney, specifically, General Curtis Hill, cannot be handed over to Plaintiff at the specific order of Curtis Hill, not to reveal any details of his investigation." *Id.* He also stated, without elaboration, that any medical records pertaining to these Big Cats "are privileged." *Id.*

PETA attempted to confer with Mr. Lowe regarding his inadequate discovery responses.[1] These efforts yielded similar results. *See* May 7, 2020 email from J. Lowe, attached as **Exhibit 4** ("It's possible that I provided more information to the State of Indiana for their case against Stark Demand that Curtis Hill share that material with you, if you feel entitled to it. Even if I still had that information, I was told not to share information about their investigation into Stark with ANYONE. . . . Those [Big Cat diet and enrichment plans] are privileged information that we refuse to share with anyone. . . . I have been instructed by the Attorney General of Indiana not to share ANY information regarding their investigation into Tim Stark. Medical records of any of Stark's animals under my care, are definitely part of their criminal investigation.").

---

[1] As Mr. Lowe is a pro se party, PETA was under no obligation to meet and confer with him to resolve these deficiencies. Regardless, PETA believes these efforts, along with PETA's attempt to address the shortcomings of Mr. Lowe's written discovery at his deposition, would meet the standard of Local Rule 37-1(a).

**C.      PETA's Deposition of Mr. Lowe**

PETA noticed Mr. Lowe's remote deposition for May 27, 2020, at 9:00 a.m. CST. *See* Notice of Videotape Deposition, attached as **Exhibit 5**.

Mr. Lowe's deposition commenced as scheduled. Within minutes, Mr. Lowe asked: "Have you cleared this with [Indiana Attorney General] Curtis Hill who has told me not to discuss this criminal investigation with anyone including PETA? . . . I will end this if nobody has cleared this as I instructed them to do. Because I'm not going to . . . violate an order in a criminal suit for PETA's suit against Tim Stark." Lowe Tr. 10:21-11:5.[2]

Counsel for PETA then showed Mr. Lowe an email from the Office of Indiana Attorney General Curtis Hill, dated May 20, 2020 stating that "[i]t has come to my attention that Jeff Lowe has stated to you and/or your co-counsels that he was advised by the Indiana Office of Attorney General to not provide others information about Wildlife in Need and/or Tim Stark. This is not true. The Indiana Office of Attorney General never provided said direction to Jeff Lowe." *See* May 20, 2020 email from P. Rizzo, attached as **Exhibit 6**.

In response, Mr. Lowe threatened to walk out of the deposition. Lowe Tr. 13:13-25 ("You guys think you scare me. I've already walked out of one of your depositions, right? Right? What did you do? What did you do to me that time? Nothing. . . . I'm going to give you a few more minutes if you keep asking me questions that you know the answers to then I'm leaving.").

Mr. Lowe made similar threats throughout the deposition. *See, e.g.* Lowe Tr. 39:11-41:2 ("[S]itting here trying to stump me with your stupid questions isn't going to work because this is why I will leave. . . . [Y]ou're throwing out stupid questions, Asher. . . . Don't f*cking do that,

---

[2] PETA does not know whether a criminal investigation of Mr. Stark by the Indiana Office of the Attorney General exists. PETA is aware only of a pending civil matter; counsel for WIN professes likewise. Lowe Tr. 10:24-25.

dude. I will get up and leave. Tim Stark, I know there's a big smile on your face because you have seen this shit happen before. Asher, don't tell me what to do. I'll turn this phone off just like that. . . . I will get up and leave. You can compel my testimony. They'll put sanctions on me, and I have no assets deliberately so you'll never get anything from me.").

During the deposition, counsel for PETA asked Mr. Lowe about veterinary care administered to the lion cubs transferred from WIN. Mr. Lowe refused to answer. Lowe Tr. 27:2-28:11 ("Q. What's the name of that veterinarian? A. It's none of your business. . . . Q. Have any of these four lions had any medical issues since August 12, 2019? A. That's also none of your business. Protected by HIPAA. Q. Is it your testimony that HIPAA protects big cats? A. Yes. It protects my medical records and those are my medical records. Q. Has a veterinarian treated any medical issues for these big cats since August 2019? A. Again, that's protected information.").

Mr. Lowe stormed out of the deposition shortly thereafter, in response to questions about the qualifications of the staff who provide day-to-day care to the lions taken from WIN. Lowe Tr. 50:1-9 ("Q. Is there a specific level of knowledge or qualification that someone working at your zoo needs to be on the big cat crew? A. Yes, they have to be trained. And this has nothing to do—I'm—you're dangerously close to me walking away. Q. For how long do they have to be trained? A. All right. I'm leaving. See you later, guys. Bye, Tim.").

Counsel for PETA then adjourned Mr. Lowe's deposition pending the resolution of this Motion. Lowe Tr. 50:23-51:11 ("[C]ounsel for PETA consulted with chambers for Magistrate Judge Lynch. The Court requested that we establish for the record what occurred. Mr. Lowe hung up and left the deposition after slightly under an hour on the record after I asked him about the training undertaken by staff at his facility that cared for the four lions taken from WIN. We

will not be closing the deposition, and we will be filing a motion with the Court to compel Mr.

Lowe to complete this deposition. With that, we can go off the record for the rest of the day.").

**ARGUMENT**

Mr. Lowe testified that in August 2019 Tim Stark drove from Indiana to central

Oklahoma, dropped off four lion cubs, and told him "here, take care of these." Lowe Tr. 6:6-10;

16:18-21. Yet Mr. Lowe has refused to testify, and has otherwise evaded discovery, about the

care he has provided these cubs. These unreasonable evasions culminated in Mr. Lowe walking

out of his deposition. Mr. Lowe's abuse of the discovery process merits an order compelling

discovery and sanctions. *See, e.g.*, ECF No. 73, at 7 ("Under Rule 37, the court has the power to

sanction a party that violates a discovery order or who makes evasive or incomplete disclosures

in response to documents requests or interrogatories. . . . Rule 37 sanctions are appropriate where

a party displays willfulness, bad faith, or fault in violating his discovery obligations. . . .

Willfulness or bad faith may be inferred through a party's 'pattern of contumacious conduct or

dilatory tactics' . . . and fault considers whether a party's discovery conduct demonstrates

objectively a lack of reasonableness." (citations omitted)).

Mr. Lowe's repeated testimony that he believes himself immune from consequences for

"walk[ing] out of one of your depositions," *see, e.g.,* Lowe Tr.13:14-16; 40:23-41:2, is clear

evidence of his willfulness, bad faith, and fault. As is the fact this is the *second* time he has

pulled this exact stunt during this litigation.[3] ECF No. 204-5, at 122:3-125:16 (throwing objects

---

[3] The typical seven-hour limit for deposition duration contemplated by Fed. R. Civ. P. 30(d) should not impede PETA's ability to obtain discovery from Mr. Lowe. Mr. Lowe's two fact depositions in this matter have amounted to, cumulatively, less than four hours on the record. As explained in this Motion, most of Mr. Lowe's second deposition—the only opportunity PETA has had to question him as a Defendant regarding matters giving rise to his liability—was consumed by Mr. Lowe's dilatory tactics. Courts in this jurisdiction have recognized "'Rule 30(d)(2) itself does not cap depositions categorically at seven hours. Instead, it states that the court [must] authorize more time 'for a fair examination.''" *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-CV-01316-JMS, 2015 WL 4458903, at *5 (S.D. Ind. July 21, 2015). More time will be needed for a fair examination when a

7

across the room and walking out to avoid questions about whether he would ever transfer animals associated with another individual's AWA license).

None of the purported reasons Mr. Lowe provided for evading discovery withstand any degree of scrutiny. These are the reasons Mr. Lowe has offered to justify his failure to participate in discovery:

- The Attorney General of Indiana told him not to disclose information about Tim Stark, Ex. 3, Ex. 4, and Lowe Tr. 10:21-11:5;

- He cannot disclose diet and enrichment plans pertaining to these lions cubs because they are somehow "privileged," Ex. 3 and Ex. 4, and because he believes they can be acquired via the Freedom of Information Act. Ex. 4;

- He cannot disclose medical information about the lion cubs, including the identity of their veterinarian, because it is protected, alternatively, by Oklahoma state law, Ex. 3 and Ex. 4, by instructions from the office of the Attorney General of Indiana, Ex. 3 and Ex. 4, by an Oklahoma state lawsuit between him and Mr. Stark, *id.*, and "by HIPAA." Lowe Tr. 27:2-28:11;

- He does not want to participate in discovery with PETA because "it's none of your f*cking business." Lowe Tr. 40:18-19 (refusing to disclose who was providing him answers during the deposition); 27:2-3 (refusing to disclose the lion cubs' veterinarian); 28:1-3 (refusing to disclose whether the lion cubs have had any medical issues); 39:111-20 (refusing to disclose body condition guidelines applicable to the lion cubs); and

---

party's "repeated use of meritless objections bordered on inappropriate and frustrated the efficient use of the allotted deposition time." *Id.*

- He does not remember or know if relevant evidence he previously bragged about exists. *See, e.g.*, Lowe Tr. 18:9-16 ("I don't remember what I had for breakfast this morning . . . I have no idea if [these recordings are] still around or not.").

To take these evasions in turn:

The Office of Indiana Attorney General Curtis Hill has stated that any suggestion by Mr. Lowe "that he was advised by the Indiana Office of Attorney General to not provide others information about Wildlife in Need and/or Tim Stark . . . . is not true." Ex. 6. When faced with this statement, Mr. Lowe's immediate response was that it "is complete bullsh*t." Lowe Tr. 12:11-25. After recovering some of his composure, Mr. Lowe suggested that, actually, he "was talking to the Attorney General Curtis Hill." *Id.* at 13:1-10. According to the Office of Indiana Attorney General Curtis Hill, however, "[t]he Indiana Office of Attorney General never provided said direction to Jeff Lowe." Ex. 6. It was immediately after this exchange that Mr. Lowe raised the possibility of walking out of the deposition, challenged PETA to compel his testimony, and said "I'm going to give you a few more minutes, and if you keep asking me questions that you know the answers to, then I'm leaving." Lowe Tr. 13:11-25.

The fact that materials relevant to Mr. Lowe's involvement in this litigation may also be relevant to separate investigations or prosecutions of Mr. Stark by state or federal officials, or to civil litigation in the state of Oklahoma between Mr. Lowe and Mr. Stark, does not create any kind of discovery privilege. *Cf. Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (a federal civil investigative demand creates no privilege with respect to the same documents in the hands of the producer).

It is also not the case that the information or records sought by PETA can be obtained from some other source that is more convenient, less burdensome, or less expensive. These

records are not available via public records requests. As Mr. Lowe admits, these are not government documents—rather, they are records he maintains in his home. Lowe Tr. 38:14-39:1. *See also, e.g.*, 9 C.F.R. § 2.75 (describing forms to be kept and maintained by exhibitors as required by the AWA).

Mr. Lowe's testimony that Big Cats are "[p]rotected by HIPAA," Lowe Tr. 28:1-7, is further "discovery conduct [that] demonstrates objectively a lack of reasonableness," ECF No. 73, at 7, and that further evinces his willfulness, bad faith, and fault. The Standards for Privacy of Individually Identifiable Health Information under the Health Insurance Portability and Accountability Act ("*HIPAA*") address the use and disclosure of protected individuals' health information by covered entities. 45 C.F.R. §§ 160 and 164. Big Cats are not protected individuals under HIPAA. 45 C.F.R. § 160.103 (defining "individual" as "the person who is the subject of protected health information" and "person" as "a natural person, trust or estate, partnership, corporation, professional association or corporation, or other entity, public or private."). Contrary to Mr. Lowe's assertion that "[HIPAA] protects my medical records and those are my medical records," Lowe Tr. 28:7-8, it is self-evident that Mr. Lowe would not himself be the subject of Big Cat medical records. *Id.*

No Oklahoma state law forbids the disclosure of records pertaining to animal care. Oklahoma state law is clear that it does not provide grounds for evading discovery in civil litigation. Okla. Stat. tit. 59, § 698.16a (any animal health record protections "shall be waived to the extent that . . . care and treatment of the animal or the nature and extent of injuries to the animal [are] at issue in any civil or criminal proceeding.").

This Court can further infer Mr. Lowe's willfulness, bad faith, and fault from his frequent contradictions of prior statements. *Compare* ECF No. 265-4 ("What [Mr. Stark] didn't know is

that [my wife] recorded him talking about pulling the cubs and asking me to lie to the USDA. I also made sure to text Stark about him pulling cubs against a court order. Those text messages have been turned over to the Indiana [Attorney General] and the Judge in his Federal trial.") *and* Ex. 3 at 1-2 ("I have no communications or recordings or test [sic] messages with Stark or my wife regarding the big cats [transferred from WIN] . . . I have no documents, videos, audio recordings, or communications with regard to these 4 lion cubs.").

Finally, Mr. Lowe must know that the condition of lion cubs driven more than 800 miles by Mr. Stark from WIN to Oklahoma—in summer heat and within days of birth, during the pendency of this litigation and in violation of a clear court order—is not "none of [PETA's] business." Lowe Tr. 27:2-28:3. PETA seeks relief against Mr. Lowe for "violat[ing] and continu[ing] to violate the [Endangered Species Act] and its implementing regulations by taking certain tigers, lions, and hybrids thereof, within the meaning of the ESA, without a permit, that were previously owned by the WIN Defendants and that have been the subject of this litigation." Amended Complaint, at ¶ 106. The relevance of discovery regarding these lions' medical history and conditions of confinement at Mr. Lowe's facility to PETA's claims in this litigation could not be clearer.

The health, safety, and welfare of these lions—both when they arrived at Mr. Lowe's facility and since—is also of ongoing relevance to PETA's claims for relief against the other Defendants in this case, who bear responsibility for Mr. Stark dropping these cubs at Mr. Lowe's doorstep with an instruction to "take care of these." Lowe Tr. 16:18-21.

## CONCLUSION

For the foregoing reasons, PETA respectfully requests the Court enter an order that (1) requires Mr. Lowe sit for his full deposition, and answer questions including, without limitation,

those regarding any Big Cats transferred between Mr. Lowe and any other Defendants in this litigation as well as questions pertaining to the conditions of their confinement from the day they were transferred to Mr. Lowe's facility to the present and (2) directs Mr. Lowe to respond without objection to PETA's Interrogatories and Requests for Production. PETA also seeks its reasonable expenses and attorney's fees incurred in bringing this Motion.

Dated: May 29, 2020                          Respectfully Submitted,

                                             **PEOPLE FOR THE ETHICAL**
                                             **TREATMENT OF ANIMALS, INC.**

                                             By: */s/ Paul Olszowka*
                                                    One of its Attorneys

Caitlin Hawks                        Brian W. Lewis
Gabriel Walters                      Paul T. Olszowka
Asher Smith                          BARNES & THORNBURG LLP
PETA FOUNDATION                      One North Wacker Drive
1536 16th Street NW                  Suite 4400
Washington, DC 20036                 Chicago, Illinois 60606
Phone: (202) 483-7382                Telephone: 312- 357-1313
caitlinh@petaf.org                   brian.lewis@btlaw.com
gabew@petaf.org                      paul.olszowka@btlaw.com
ashers@petaf.org

## CERTIFICATE OF SERVICE

I, Paul Olszowka, an attorney, certify that on May 29, 2020, the foregoing document was served via the Court's ECF system to the attorney of record for the Defendants in this case, J. Clayton Culotta, 815 E. Market Street, New Albany, IN 47150, clay@culottalaw.com, and via electronic mail to Defendants Timothy L. Stark, pro se, 3320 Jack Teeple Road, Charlestown, IN 47111, wildlifeinneed@aol.com, and Jeff Lowe, 25803 N County Road 3250, Wynnewood, OK 73098, returnprice@hotmail.com.

/s/ Paul Olszowka

Paul.Olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312- 357-1313
Facsimile: 312-759-5646

13