**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| WILDLIFE IN NEED AND WILDLIFE IN DEED, INC., TIMOTHY L. STARK, MELISA D. STARK, AND JEFF LOWE, | ) ) ) ) ) ) | Cause No. 4:17-cv-00186-RLY-DML |
| Defendants. | ) ) | |

### BRIEF IN SUPPORT OF PETA'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE REGARDING KAHARI'S DEATH AND SURVIVING LIONS' MEDICAL HISTORIES IN CONJUNCTION WITH SUMMARY JUDGMENT

Plaintiff People for the Ethical Treatment of Animals, Inc. (*"PETA"*) filed a motion for summary judgment against Defendant Jeff Lowe on September 11, 2020. ECF No. 406. This motion related to his mistreatment of four lions—Amelia, Kahari, Leo, and Nala—who he accepted from Defendant Tim Stark in August 2019.

Five days after PETA moved for summary judgment, Mr. Lowe filed a notice with this Court in which he stated that Kahari had died two weeks earlier and claimed that her death had occurred under suspicious circumstances, including an alleged break in and use of a poison dart. ECF No. 420.

Since receiving this notice, PETA has obtained evidence that reveals these specific claims about Kahari's death to be false or misleading and that reveals more information about Mr. Lowe's mistreatment of the surviving lions. This evidence includes (a) a final necropsy report prepared by the Oklahoma Animal Disease Diagnostic Laboratory at Oklahoma State University's College of Veterinary Medicine (*"OSU"*), (b) additional veterinary records Mr. Lowe had withheld in

1

violation of this Court's orders, (c) a report prepared by forensic experts at the Virginia Museum of Natural History that further demonstrates the unlikelihood of claims made by Mr. Lowe in ECF No. 420, (d) photographs and videos of Amelia, Kahari, and Leo that were taken following their rescue from Mr. Lowe's facility, (e) testimony of Lauren Lowe during an October 2, 2020 deposition that was ordered by the United States District Court for the Western District of Oklahoma, (f) additional email communications produced by Mrs. Lowe, and (g) additional declarations, including from Nala, Amelia, and Leo's current veterinarian, Dr. Joyce Thompson, DVM, as well as PETA experts Dr. Jennifer Conrad, DVM and Jay Pratte, that address this new information.

PETA, through its counsel, now moves the Court for leave to file this recently obtained evidence in further support of its motion for summary judgment against Mr. Lowe.

## I. This Court Should Permit PETA Leave to File Supplemental Evidence

Courts permit parties leave to file supplemental briefing and evidence when, after initial briefing has been filed, evidence emerges that is necessary "to build a complete and accurate record . . . which will assist the Court" in deciding the motions at hand. *Thompson v. City of Indianapolis*, No. 1:15-cv-01712-TWP-DML, 2017 WL 1546316, at *2 (S.D. Ind. Apr. 28, 2017). This includes motions for summary judgment. *See, e.g.*, *Eastman v. Santos*, No. 18-CV-602-RJD, 2020 WL 362770, at *3 (S.D. Ill. Jan. 22, 2020) ("In this motion, Plaintiff indicates he was recently provided six additional photographs . . . Plaintiff explains he did not have these photographs at the time he filed his motion for summary judgment and asks that they be incorporated into his motions. . . . The Court will consider these six photographs as supplemental evidence related to Plaintiff's summary judgment filings."); *Elder Care Providers of Indiana, Inc. v. Home Instead, Inc.*, No. 114CV01894SEBMJD, 2016 WL 11190767, at *2 (S.D. Ind. Mar. 25, 2016) (allowing the same).

Granting leave is appropriate here. Newly discovered evidence shows Mr. Lowe has likely been untruthful with this Court regarding Kahari's death and has withheld information, in violation of this Court's orders, regarding the health of the surviving three lions. As explained further below, this evidence is relevant to undisputed material facts relating to the inadequacy of Mr. Lowe's care.

### a. PETA's Supplemental Evidence is Relevant to the Reliability, Accuracy, and Credibility of Mr. Lowe's Notice Regarding Kahari's Death

On September 16, 2020, counsel for Mr. Lowe filed a notice with this Court stating that (1) Mr. Lowe's property was broken into during the night of August 30, 2020, that (2) Kahari was found deceased the next day, and that (3) it was suspected that whoever broke into the facility "also shot or otherwise caused a dart to inject poison into the lion." ECF No. 420, at 1. New evidence shows all of these statements to be either false or misleading:

- Modeling performed by forensic entomologists demonstrates that it is unlikely, based on the size of the insects recorded on Kahari's body during her necropsy, that she died after approximately 11:00 a.m. to 12:00 p.m. on August 30, 2020.[1] Declaration of Dr. Joe Keiper and Dr. Kal Ivanov ("***Keiper and Ivanov Decl.***"), attached as **Exhibit 1**, at ¶¶ 1-9.

- The level of decomposition recorded in Kahari's body by the afternoon of August 31, 2020 is also inconsistent with the timeline offered by Mr. Lowe. Supplemental Declaration of Jay Pratte ("***Pratte Decl.***"), attached as **Exhibit 2**, at ¶ 9;

---

[1] Dr. Joe Keiper, the Executive Director of the Virginia Museum of Natural History, and Dr. Kal Ivanov, an Associate Curator of Invertebrates at the Virginia Museum of Natural History, performed this analysis. Keiper and Ivanov Decl., at ¶¶ 11-12. PETA readily concedes that it did not disclose Dr. Keiper or Dr. Ivanov by this Court's August 28, 2020 deadline to disclose expert witnesses pertaining to Mr. Lowe. ECF No. 363. As PETA could not have seen the need to retain forensic entomologists by that date, its failure to do so was "substantially justified." *Ohrn v. JDPHD Inv. Grp., LLC*, No. 1:12-CV-00620-TWP, 2013 WL 6175165, at *4 (S.D. Ind. Nov. 25, 2013) (quoting Fed. R. Civil P. 37(c)(1) and permitting late expert disclosures).

- Supplemental Declaration of Dr. Jennifer Conrad, DVM ("***Conrad Decl.***"), attached as **Exhibit 3**, at ¶ 4.

- The necropsy performed found no poisons. Final Report, Oklahoma Animal Disease Diagnostic Laboratory at Oklahoma State University ("***OSU***") College of Veterinary Medicine (Sept. 21, 2020) ("***Final Necropsy***"), attached as **Exhibit 4**, at 2-3. Nor were there any findings regarding puncture wounds or other tissue trauma likely to be associated with death via poisoned dart. *Id.*; Pratte Decl., at ¶ 6; Conrad Decl., at ¶¶ 6-7. Lauren Lowe also admitted during her deposition that there were no visible signs of physical trauma on Kahari's body.[2] October 2, 2020 Deposition Transcript of Lauren Lowe ("***L. Lowe Tr.***"), attached as **Exhibit 5**, at 18:8-13.

- Likewise, OSU's Dr. Brianne Taylor wrote in an email to Mrs. Lowe that "we can trust the negative [toxicology] result and consider it unlikely that she had any sort of toxin in her system when she died." Emails between Lauren Lowe and Dr. Brianne Taylor ("***Lowe Emails***"), attached as **Exhibit 6**, at 3.

- Mrs. Lowe did not report the discovery of a dart to OSU until almost two weeks after the date on which Kahari allegedly died.[3] Lowe Emails, at 6.

- Mrs. Lowe refused to state during her deposition whether the alleged break-in occurred before or after Kahari's death. L. Lowe Tr., at 8:6-13. This was not the

---

[2] Mrs. Lowe has stated, under oath, that she is a co-owner of Mr. Lowe's facility and that she is "fully involved in the operation of the park, including decisions on husbandry, diets, veterinary care, etc." and "also handle[s] the records for inventory, acquisition, disposition, etc." Sworn Declaration of Lauren Lowe (July 8, 2020), attached as **Exhibit 7**.

[3] No one at Mr. Lowe's facility ran any tests on the dart. L. Lowe Tr., at 24:5-8. PETA has not received any update from Mr. Lowe or his counsel regarding an investigation by the Garvin County Sheriff's Office.

first time Mrs. Lowe failed to claim the alleged break-in occurred prior to Kahari's death. In an email Mrs. Lowe wrote to Dr. Taylor on September 21, 2020, she stated: "The police are investigating because our zoo had a break-in *the same week* Kahari passed away." Lowe Emails, at 1 (emphasis added). While Mr. Lowe previously testified that his facility had a number of hidden security cameras that would alert him to any wrongdoing, ECF No. 408-7, at 29, Mrs. Lowe admits that the facility's security cameras did not capture a break-in. L. Lowe Tr., at 9:5-10:3.

In addition, this evidence shows that it was the conduct of Mr. Lowe and those under his supervision that spoliated Kahari's body, foreclosing more definitive conclusions regarding Kahari's death. Although Kahari likely died before the evening of August 30, 2020, Keiper and Ivanov Decl., at ¶¶ 1-9; Pratte Decl., at ¶ 9; Conrad Decl., at ¶ 4, Kahari's body was left outside to decompose beyond the point at which histologic and other examinations could determine a cause of death. Final Necropsy, at 2; L. Lowe Tr., at 17:11-19. It is widely understood that lack of refrigeration speeds decomposition. Keiper and Ivanov Decl., at ¶ 9; Pratte Decl., at ¶ 9; Conrad Decl., at ¶ 5. For this reason, the United States Department of Agriculture instructs regulated facilities to either conduct "[n]ecropsies . . . within an appropriate interval after the death," or else keep "the body . . . at appropriate refrigerated temperatures to ensure a meaningful examination." ECF No. 6-3 (USDA Animal Care Policy Manual, Policy #3 (Sep. 29, 2017)), at 13.

### b. Newly-Obtained Evidence Shows That Mr. Lowe's Veterinary Disclosures About These Lions Were Incomplete

On September 15, 2020, this Court ordered Mr. Lowe to, by September 17, 2020, "identify any medical records, within his possession, custody, or control, with respect to any of these Big Cats that have not been previously produced by him to the plaintiff." ECF No. 417, at 1. While Mr. Lowe disclosed the next day that "[t]he veterinary records for all 4 lions at issue are in

possession of Defendant Jeff Lowe," ECF No. 420, at 2, he did not produce any new documents or suggest that there were any veterinary records other than what PETA already had.

On September 21, 2020, the surviving three lions were transferred to The Wild Animal Sanctuary ("*TWAS*"). As explained in more detail below, it was immediately apparent that they had suffered from injuries and conditions that Mr. Lowe had not previously disclosed. In response, PETA made new inquiries to Mr. Lowe's veterinarian. On September 28, 2020, PETA received veterinary records, including examination results and radiographs, pertaining to Nala that it had not previously received. New Rose Rock Veterinary Hospital and Pet Resort Records ("*New Vet Records*"), attached as **Exhibit 8**. These records revealed that Nala was diagnosed in June 2020 with e-coli and strep infections. *Id.* at 19, 27. These conditions are potentially fatal if left untreated. Conrad Decl., at ¶ 10. These records also revealed that, in addition to incidents in March 2020 in which Nala ingested foreign objects, she also appears to have ingested foreign objects in June 2020. New Vet Records, at 14. To date, Mr. Lowe has not provided these records to PETA.

During Mrs. Lowe's October 2, 2020 deposition, she recalled that the foreign object Nala consumed in June 2020 may have been a toy, L. Lowe Tr., at 47:10-13, and recalled treating Nala's respiratory issues with a human nebulizer mask, which she used by laying down next to Nala and forcing it toward Nala's face. *Id.* at 54:3-56:24. While this "treatment" was unlikely to be effective in mitigating Nala's underlying conditions, Conrad Decl., at ¶ 10, the newly disclosed veterinary records reveal that Nala exhibited fear and growling responses to the nebulizer mask. New Vet Records, at 25. Mrs. Lowe had no recollection of administering antibiotics prescribed for the e-coli and strep infections. L. Lowe Tr., at 57:5-59:11.

### c. Newly-Obtained Veterinary Records Reveal New Deficiencies

One of Mr. Lowe's employees told representatives for PETA and TWAS during the

September 21, 2020 transfer that one of these lions, Nala, had been limping for four days and that "[t]he first couple days, she didn't put any weight on it." Video from Sept. 21, 2020 Lion Rescue, attached as **Exhibit 9**, at 00:02:10-00:02:40. The extent of these lions' condition became more apparent after they were transferred into a quarantine enclosure at TWAS. Nala walked only with a severe limp and appeared to be in severe pain, frequently falling over after only a few steps. IMG_6539.MOV, attached as **Exhibit 10**; IMG_6540.MOV, attached as **Exhibit 11**; IMG_6551.MOV, attached as **Exhibit 12**. Another lion, Leo, engaged in compulsive suckling of his siblings' ears—a behavioral abnormality associated with premature maternal separation. Declaration of Dr. Joyce Thompson, DVM ("***Thompson Decl.***"), attached as **Exhibit 13**, at ¶ 8; Pratte Decl., at ¶ 11; Nala_amelia_leo_at_the_wild_animal_sanctuary.mp4, attached as **Exhibit 14**, at 01:22-01:50; IMG_6552.JPG, attached as **Exhibit 15**; IMG_6553.JPG, attached as **Exhibit 16**; IMG_6554.JPG, attached as **Exhibit 17**.[4]

Nala and her siblings have now undergone additional medical examinations by veterinarians with TWAS, as well as, in the case of Nala, Colorado State University ("***CSU***"). Thompson Decl., at ¶ 2; Nala Veterinary Records from CSU ("***CSU Vet Records***"), attached as **Exhibit 18**. These examinations revealed a number of both previously undisclosed and lingering issues, including that they are all undersized and underweight, Thompson Decl., at ¶ 3, that Nala is suffering from multiple skeletal factures and bone malformations, *id.* at ¶ 7, that Nala is suffering from an infection around an ingrown, swollen claw, *id.* at ¶ 9, that Nala is suffering from weakness, ataxia, and lameness in her right front limb, *id.* at ¶ 4, that Nala has reduced musculature from

---

[4] The photographs and videos labelled IMG_6539.MOV, IMG_6540.MOV, IMG_6551.MOV, IMG_6552.JPG, IMG_6553.JPG, and IMG_6554.JPG are authenticated in the Declaration of Brittany Peet, attached as **Exhibit 21**. The video labelled Nala_amelia_leo_at_the_wild_animal_sanctuary.mp4 is authenticated in the Declaration of Ethan Eliam, attached as **Exhibit 22**. The video labelled Video from Sept. 21, 2020 Lion Rescue is authenticated in the Declaration of Thomas Mentel, attached as **Exhibit 23**.

what would be expected of a lion of her age, *id.*, that Nala's coat showed several abrasions and pressure sores, *id.* at ¶ 5, and that both of Nala's ears were still excoriated and ulcerated from fly strike. *Id. See also* WIN_Nala_ear1.JPG, attached as **Exhibit 19**; WIN_Nala_ear2.JPG, attached as **Exhibit 20**.[5]

During Mrs. Lowe's October 2, 2020 deposition, she acknowledged Nala's leg injury, L. Lowe Tr., at 59:12-23, and admitted that these lions engage in repeated suckling behaviors on their siblings. *Id*. at 60:23-61:16.

These issues are the consequences of Mr. Lowe's poor husbandry. A TWAS veterinarian concluded that inadequate nutrition is the likeliest cause of Nala's gait abnormalities—specifically, inadequate Vitamin A and thiamine. Thompson Decl., at ¶¶ 7, 10. The extent of these deficiencies would have been sufficient to cause changes in bone development, especially as observed in the skull, as well as severe pain, neurologic abnormalities and death. *Id.* at ¶¶ 10-12. This veterinarian's current prognosis for Nala "is fair to poor depending on her responses to nutritional changes and fracture healing," and "[b]ecause of the changes in her skull bones, her signs could worsen or improve as her growth and maturation continue until her growth plates close." *Id.* at ¶ 13. She also concluded that Leo and Amelia, who have experienced the same inadequate husbandry and exhibit similar poor growth, likely share similar deficiencies. *Id.* at ¶ 14. As a result, she has begun treating them with Vitamin A and thiamine supplementation as well. *Id.*

## II. Both the New Evidence and Mr. Lowe's Lack of Candor Are Relevant to Undisputed Material Facts

As explained above, Mr. Lowe's failures and omissions spoliated Kahari's body and foreclosed more definitive conclusions regarding her death. Final Necropsy, at 2; Keiper and

---

[5] These photographs are authenticated in the Declaration of Ethan Eliam.

8

Ivanov Decl., at ¶ 9; Pratte Decl., at ¶ 9; Conrad Decl., at ¶ 5; L. Lowe Tr., at 17:11-19. Mr. Lowe also delayed more than two weeks before informing either PETA or this Court regarding Kahari's death. ECF No. 420, at 1. That period of silence encompassed both this Court's planning and orders regarding the logistics of these lions' rescue from Mr. Lowe, *see, e.g.*, ECF Nos. 405 (memorializing status conference at which Mr. Lowe's counsel failed to disclose Kahari's death) and 417, at 1 (requiring disclosures from Mr. Lowe regarding Big Cats to facilitate transfers), as well as this Court's deadline for dispositive motions with respect to Mr. Lowe.[6] ECF No 363.

Due to both the newly-presented evidence and the extent of Mr. Lowe's cover-up, including falsehoods, misleading statements, omissions, and failures to take necessary steps to adequately preserve Kahari's body, this Court would be justified in inferring that Mr. Lowe's improper husbandry, described in further detail in PETA's brief in support of its motion for summary judgment, ECF No. 407, at 8-27, killed Kahari. *See* Fed. R. Civ. P. 37(b)(2)(A)(i), (ii) (allowing that, if a party fails to obey court orders or participate in required discovery, a court may deem "that the matters embraced in the order or other designated facts be taken as established for purposes of the action").

Likewise, the new evidence regarding these lions' veterinary care and needs, as well as Mr. Lowe's lack of candor and violations of court orders regarding disclosure of veterinary records, justify conclusions that his inadequate husbandry caused the surviving lions' newly revealed medical issues. *See* Fed. R. Civ. P. 37(b)(2)(A)(i), (ii).

---

[6] Tragically, this Court had already ordered Kahari's rescue by the time Mr. Lowe informed it of Kahari's death on September 16. *See* ECF Nos. 415 (order on scope of the permanent injunction and on determination of sanctuaries, entered September 15), 416 (order establishing the logistics of Big Cat transfers, entered earlier in the day on September 16), and 417 (order directing Mr. Lowe to provide disclosures to PETA to facilitate transfers, entered earlier in the day on September 16). In a grim irony, this Court's first order announcing that the determination of sanctuaries would include the four lions in Oklahoma was entered on August 31—the very same day Mr. Lowe claims that Kahari died. *See* ECF No. 388. Nevertheless, Mr. Lowe remained silent until the last minute.

Such conclusions are relevant to PETA's motion for summary judgment against Mr. Lowe. For example, PETA already explained in its statement of material facts not in dispute that:

- Maternal separation deprives lions of vital components that help develop a healthy immune system. ECF No. 407, at 8.

- Maternal separation increases propensity toward abnormal and injurious behaviors. *Id.* at 8, 12.

- Mr. Lowe fed these lions an inadequate diet lacking proper nutrients, and that "[t]he totality of Mr. Lowe's dietary choices denied these lions required nutrients necessary to their growth and immune systems . . . and may cause otherwise preventable heart disease, blindness, and bone deformities." *Id.* at 8-10, 20.

- Nala suffered from a number of infectious conditions, including to her respiratory system, in June 2020. *Id.* at 11, 17.

- Mr. Lowe failed to provide sufficient access to qualified veterinary care. *Id.* at 10-11, 13-14.

- All four lions suffered from severe fly strike, causing visible wounds, scabbing, and ulceration. *Id.* at 15-16.

- All four lions suffered from mostly barren enclosures lacking appropriate environmental and other enrichment. *Id.* at 18.

- Nala is likely to suffer long-term injuries and annoyances, "including immediate pain as well as long-term avoidance placing weight on paws, lameness, hesitancy to walk or engage in normal behaviors such as jumping, arthritis, and abnormal standing and gait." *Id.*

- Nala's history of consuming inedible foreign objects is a consequence of inadequate husbandry. *Id.*

Given these facts, this Court should grant PETA leave to file supplemental evidence.

## CONCLUSION

PETA respectfully requests that this Court consider the attached evidence in conjunction with its motion for summary judgment against Jeff Lowe at ECF No. 406.

Dated: October 13, 2020

Respectfully Submitted,

**PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.**

By: */s/ Asher Smith*
　　　　One of its Attorneys

Caitlin Hawks
Gabriel Walters
Asher Smith
PETA FOUNDATION
1536 16th Street NW
Washington, DC 20036
Phone: (202) 483-7382
caitlinh@petaf.org
gabew@petaf.org
ashers@petaf.org

Brian W. Lewis
Paul T. Olszowka
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
Telephone: 312- 357-1313
brian.lewis@btlaw.com
paul.olszowka@btlaw.com

**CERTIFICATE OF SERVICE**

I, Brian Lewis, an attorney, certify that on October 13, 2020, the foregoing document was served via the Court's ECF system, email and overnight courier to the attorney of record for the Defendants in this case, Daniel Card, 512 NW 12th Street, Oklahoma City, OK 73103, dan@cardlawok.com. Clayton Culotta, 815 E. Market Street, New Albany, IN 47150, clay@culottalaw.com, Defendant Timothy L. Stark, pro se, 3320 Jack Teeple Road, Charlestown, IN 47111, wildlifeinneed@aol.com, and by overnight courier to Defendant Melisa Stark, 1927 Harmony Circle, Charlestown, IN 47111.

Dated: October 13, 2020              */s/ Brian Lewis*

                                                    Brian W. Lewis
                                                      Brian.Lewis@btlaw.com
                                                    Paul T. Olszowka
                                                      Paul.Olszowka@btlaw.com
                                                    BARNES & THORNBURG LLP
                                                    One North Wacker Drive, Suite 4400
                                                    Chicago, Illinois 60606
                                                    Telephone: 312-357-1313
                                                    Facsimile: 312-759-5646

                                                    Caitlin Hawks
                                                      CaitlinH@petaf.org
                                                    Gabriel Walters
                                                     GabeW@petaf.org
                                                    Asher Smith
                                                     AsherS@petaf.org
                                                    PETA FOUNDATION
                                                    1536 16th Street, NW
                                                    Washington, DC 20036
                                                    Telephone: (202) 483-7382
                                                    Facsimile: (202) 540- 2208

                                                    *Attorneys for People for the Ethical Treatment of Animals, Inc.*